The PRUDENTIAL INSURANCE COMPA-
NY OF AMERICA, Appellant,

v.

Ignacio TORRES et ux., Appellees.

No. 14816.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 3, 1969.

Rehearing Denied Jan. 7, 1970.

Grady Barrett, Matthews, Nowlin, Macfarlane & Barrett, San Antonio, R. Philip Schulze, Houston, for appellant.

Perry Rowan Smith, Henry Gonzalez, Jr., San Antonio, for appellees.

BARROW, Chief Justice.

Appellant brought this suit to rescind and cancel a policy of life insurance issued appellee Ignacio Torres which also provided certain hospitalization and medical benefits to insured and his family. Appellees, Ignacio Torres and wife, Bertha G. Torres, counter-claimed for recovery of medical expenses incurred as the result of the hospitalization of Mrs. Torres and their son, Albert, together with penalty interest and attorneys' fees. Although no motion for instructed verdict was made by appellees, the trial court apparently concluded that they were entitled to recover, as a matter of law, in that the only issue submitted related to the amount of attorneys' fees. Judgment was entered that appellees recover the total sum of $2,324.43; being the stipulated amount of medical expenses provided for by said policy, to-wit, $837.45 for Mrs. Torres and $211.15 for Albert Torres, together with penalty interest in the amount of $125.83, and attorneys' fees of $1,150.00, as found by the jury.

The facts are substantially undisputed. Prior to January 5, 1967, Torres was an employee of Gonzaba Lumber Company, which was owned by Luis Gonzaba, brother of Mrs. Bertha Torres. For some time, Luis Gonzaba and some of his six employees had considered securing a group insurance policy to provide hospitalization and medical benefits. Mr. Gonzaba had discussed such a policy with several people, including Herbert A. Avalone, whose wife was a distant cousin of Gonzaba and Mrs. Torres. Avalone had worked about two months as an agent for Penn Mutual Insurance Company under Jerry Jost, who was then the general agent in San Antonio. Avalone had no prior experience in the life or health insurance business and held only a 90-day temporary license. Avalone advised Jost of Gonzaba's interest in a group policy. Penn Mutual did not write group insurance for groups of less than ten employees; however, Jost was also a licensed agent of Prudential and au-

thorized to broker policies with it. At the request of Jost, Prudential's employees prepared a proposal to insure Gonzaba and his employees, which proposal was discussed with Gonzaba by Jost and Avalone and accepted. Avalone secured the necessary application forms from Prudential's San Antonio office, together with some general instructions from the clerks in this office.

Each Gonzaba employee was required to submit an application for insurance and Avalone contacted Torres for the purpose of completing his application form while the latter was busy loading lumber. Torres had a limited education and read very little English, and therefore requested that he be permitted to take the form home and let his wife examine it. Avalone advised him that such was not necessary and that as soon as Torres signed the application form all employees would be covered. The application signed by Torres contains three false answers which are urged by Prudential as the basis for rescission and cancellation of the policy. The form is checked to indicate that neither Torres nor Mrs. Torres had previous trouble with diabetes, and that neither had been hospitalized or had consulted a physician during the past five years. Actually, Mrs. Torres suffered from diabetes for which she not only had consulted a physician but for which she had been twice hospitalized within the past five years. Avalone marked these erroneous answers in the application, and it is not established whether he did so before or after Torres signed same. Avalone admits that he deliberately did not ask Torres about the physical condition of Mrs. Torres because Avalone did not think that such information was required for this type policy. Actually, it would not have been required if there were more than ten employees involved. Also, there is a false certificate on the back of the policy whereby Jost certified that he had personally seen the insured on the day the application was completed and that each of the questions had been separately asked and correctly answered to the best of

his knowledge. Jost testified that he signed this false certificate because Avalone had only a temporary license.

The applications were submitted along with the initial premium, and the policies subsequently issued to Gonzaba and each of his employees. Torres' policy was kept in the safe of the lumber company until after the claim arose. An underwriter for Prudential testified that the questions falsely answered were material to this type risk and that the policy would not have been issued if such application had reflected Mrs. Torres' correct medical history. On February 25, 1967, Mrs. Torres consulted a doctor relative to a severe abdominal pain which subsequently led to her hospitalization for a hysterectomy operation. On August 15, 1967, the son was hospitalized for a tonsilectomy.

We are met at the outset by appellees' cross-point that appellant's attempt to rescind the policy because of alleged misrepresentations fails because appellant did not establish that it gave notice to appellees of its refusal to be bound by such policy within a reasonable time after discovering the falsity of the representations as required by Art. 21.17, V.A.T.S. Insurance Code. This statute requires that such notice be given the assured within a reasonable time, and further provides that ninety days is a reasonable time. This statutory notice is an essential element of a defense based on misrepresentation. Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233 (1957).

Here the record does not show when appellant discovered the false answers in the application of January 5, 1967. It was not until September 5, 1967, that appellant wrote appellees a letter and advised that unless they agreed to exclude Mrs. Torres as an additional medical insured, the policy would be rescinded. Appellee did not respond to such offer, and this suit was subsequently filed. No explanation is given for the delay in not paying or denying the claim of Mrs. Torres which had accrued in March, 1967. The September 5th letter in-

fers that an investigation was begun shortly after the claim accrued and it is reasonable to assume that Mrs. Torres' health history was learned shortly thereafter, in that the information was easily available. We cannot say from this record that appellant established as a matter of law that the letter of denial was written within ninety days after it learned of such false answers.

▮▮▮ Since no issues were requested by appellant to establish this essential element of its case, it thereby waived a determination of same under Rule 279, Texas Rules of Civil Procedure. This Rule provides in part that such omitted issue shall be deemed as found by the court in a manner as to support the judgment. Appellant urges that this provision has no application here because the court instructed a verdict for appellees. See Clark v. Lone Star Life Ins. Co., 347 S.W.2d 290 (Tex.Civ.App.— Waco 1961, writ ref'd n.r.e.). Here no motion for instructed verdict was even made by appellees and one issue was submitted to the jury.[1] In this situation, appellant had the duty of requesting any disputed fact issue necessary to its case. This was recognized by appellant, in that numerous issues were actually requested regarding whether the application contained certain false answers which were material to the risk. Appellant thus waived a jury determination of the essential issue of whether notice was given within a reasonable time, and we must presume the trial court found that same was not timely given. Rule 279, supra; Strauss v. LaMark, 366 S.W.2d 555 (Tex. Sup.1963).

In any event, the trial court correctly concluded that under the undisputed facts in this case appellant was not entitled to rescind the policy in question because of the false answers in the application signed by Torres. The basic question presented is whether the insurer or the insured is to be charged with responsibility for the ignorance, negligence, or mistake of the agent Avalone, who was responsible for the false answers. This question has been a frequently recurring problem which has required the attention of and a determination by the Courts of all jurisdictions for many years. Such problem is considered at length in a recent annotation. See Insurance Application—False Answers, 26 A.L.R.3d 6. The general rule is stated at p. 17: "In the absence of special factors, many decisions by the courts of a large number of jurisdictions support the view that where an insurer's agent enters false answers to questions contained in the insurance application, following and despite a truthful disclosure by, and without the knowledge of, the applicant or insured, who acted in good faith and was free of fraud or collusion, the insurer ordinarily is responsible for such erroneous answers and cannot defend an action on the policy issued upon the application on the ground of the falsity thereof." In support of such general rule in Texas, some twenty-nine cases are cited, while six cases are listed as contra to the general rule. See pp. 43–44.

Appellant urges that the general rule has no application here, in that, as a matter of law, Avalone was the agent of Torres in filling out the application form and Torres

---

1. The judgment states in part:
   "* * * at the conclusion of the evidence the Plaintiff-Cross Defendant, PRUDENTIAL INSURANCE COMPANY OF AMERICA, filed and presented to the Court its motion for instructed verdict, and the Court having read and considered same overruled said motion to which action of the Court, Plaintiff-Cross Defendant duly excepted, and the Court having invited Counsel for both parties to submit proper special issues for submission to the Jury, and certain issues having been submitted by Counsel for both parties, and the Court having read and considered same concluded that none of said issues requested by Plaintiff-Cross Defendant should be submitted, the Court denied and refused to submit same, to which action of the Court Plaintiff-Cross Defendant duly excepted, and the Court having concluded that the only issue requested by Defendants-Cross Plaintiffs which should be submitted was with respect to the amount for reasonable attorneys' fees, * * *."

is bound by same. In this connection the evidence is undisputed that Avalone was never appointed a broker or any type agent by appellant. In fact it is not conclusively established that appellant even knew that Avalone individually was to secure the application from Torres or any of the Gonzaba employees.

Under some of the cases listed in the above annotation a distinction is drawn as to the type of agent involved. See Sec. 5a, pp. 78–79. Such distinction is immaterial in Texas in that by statute any person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, any application for insurance to or from such company, shall be held to be the agent of the company for which the act is done or the risk is taken. See Art. 21.02, supra. This authority is limited by Art. 21.04 to the extent that a soliciting agent has no power to waive, change or alter any of the terms or conditions of the application or policy. Southland Life Ins. Co. v. Statler, 139 Tex. 496, 163 S.W.2d 623 (1942). There is no provision in the application or policy applied for here that same becomes effective upon receipt by insured in good health. Cf. Jackson v. American National Insurance Company, 362 S.W.2d 916 (Tex.Civ.App.— Beaumont 1962, writ ref'd).

In Hassell v. Commonwealth Casualty & Ins. Co., 143 Tex. 353, 184 S.W.2d 917 (1945), the Supreme Court answered a certified question as to whether an agent who completed a blank form signed by the insured and inserted false answers was the agent of insured or insurer in filling out the answers. It was held that such agent was the agent of the insurer in completing the application form which had been furnished to the agent by the insurer.

■ Under these authorities Avalone was the agent of appellant in completing the application form signed by Torres. The false answers were the direct result of Avalone's negligence or ignorance in not inquiring of Torres as to his wife's health

history. Avalone was advised that Torres could not read English and Torres was told that only his signature on the application was required. To place the burden upon Torres to insist on having someone read the application to him under these circumstances would be to ignore the realities of the insurance world. Under the Texas rule, in order to avoid a policy, false statements must have been made willfully and with design to deceive or defraud. Allen v. American National Ins. Co., 380 S.W.2d 604 (Tex.Sup.1964); Clark v. National Life & Accident Ins. Co., 145 Tex. 575, 200 S.W.2d 820 (1947). Torres truthfully and fully answered every question propounded to him by the agent of Prudential who was soliciting the policy. The trial court did not err in concluding that Torres did not make these false answers willfully and with design to deceive or defraud appellant.

The trial court did not err in refusing to submit appellant's requested issues in that the evidence was undisputed as to how the false answers were made. Furthermore, since there is no finding of estoppel or waiver by appellant, its points complaining that there is no evidence to support such an implied finding is without merit.

Appellant asserts that attorneys' fees are not recoverable for this type loss under Art. 3.62 Insurance Code and therefore the trial court erred in submitting an issue on same and in entering judgment based on the answer thereto. This statute has application to life, accident, life and accident, or life, health and accident policies. Bybee v. Fireman's Fund Ins. Co., 160 Tex. 429, 331 S.W.2d 910 (1960); American Indemnity Co. v. Garcia, 398 S.W.2d 146 (Tex. Civ.App.—San Antonio 1966, writ ref'd n. r.e.).

■ The policy in controversy provided, among other coverages, medical care expense benefits consisting of hospitalization benefits as well as major medical expense benefits. We see no difference between such a policy and one providing for medi-

cal payment coverage. Both are in the nature of health and accident policies and within the concept of such statute. See Appleman, Insurance Law & Practice, 1965, Secs. 17–19; American Indemnity Co. v. Garcia, supra. Since demand for payment was timely made and refused, the trial court did not err in allowing a reasonable attorney's fee to appellees.

The judgment is affirmed.