AZTEC LIFE INSURANCE COMPANY OF TEXAS, Relator,

v.

Honorable Jerry A. DELLANA, Respondent.

Cyrus A. JENNINGS, Relator,

v.

Honorable Jerry A. DELLANA, Respondent.

Nos. 14097, 14142.

Court of Appeals of Texas, Austin.

Feb. 29, 1984.

Rehearing Denied April 11, 1984.

---

**1.** No further force or authority.

R. James George, Jr., Thomas B. Hudson, Jr., Graves, Dougherty, Hearon & Moody, Austin, for Aztec Life Ins. Co. in No. 14097 and Judge Dellana in No. 14142.

Nicolai von Kreisler, Alvis, Carssow & von Kreisler, and Joe K. Longley, Longley & Maxwell, for Judge Dellana in No. 14097 and Jennings in No. 14142.

Before SHANNON, POWERS and BRADY, JJ.

SHANNON, Justice.

These proceedings in mandamus attack the validity of an order of a district judge requiring the production of an insurance claims denial journal and refusing to compel the production of certain claims files pursuant to Tex.R.Civ.P.Ann. 167 (Supp. 1983). Aztec Life Insurance Company of Texas and Cyrus A. Jennings, relators, in the respective mandamus proceedings, complain of Honorable Jerry Dellana, Judge Presiding of the 167th District Court

of Travis County. Judge Dellana signed the order in question on September 20, 1983, which order relators seek to have vacated by writs of mandamus. This Court will conditionally grant the petition for writ of mandamus applied for by Jennings and will deny the other.

In the suit underlying these proceedings, Jennings sued Aztec in the district court of Travis County for breach of a credit life and disability insurance policy. Jennings alleged that he became disabled after the purchase of the insurance policy but that Aztec refused to pay the benefits to which he was entitled. For such alleged breach Jennings sought policy benefits, statutory penalty, and attorney's fees. In addition, Jennings asserted that in denying his claim, Aztec violated Tex.Ins.Code Ann. art. 21.21 § 16(a) (1981) by committing unfair and deceptive practices in the business of insurance; that Aztec breached its "duty of good faith and fair dealing"; and that in failing to investigate his claim before denying it, the insurance company was negligent or, alternatively, was grossly negligent. Jennings claimed that he was entitled to recover punitive damages as well as actual damages.

Aztec defended the suit upon the basis of no coverage because of a "pre-existing condition" exclusion contained in its policy.

In support of his extra-contractual claims Jennings pleaded:

[Aztec's] selective and prejudicial handling of [Jennings'] claim evidences a common scheme and design on [Aztec's] part to avoid liability. [Aztec's] insureds are all purchasers of credit life and disability policies from automobile and truck dealerships throughout Texas owned in many instances by the same persons who owned [Aztec]. All such claims are reviewed by [Aztec's] informal "claims committee," which is made up of two of [Aztec's] employees and two attorneys whose firm represents [Aztec] and the automobile and truck dealerships [Aztec] owns. This committee routinely handles disability claims in a way that weighs the subjective interpretation of medical data in favor of [Aztec] and against the insured, which [Jennings] believes is done with the intention of denying legitimate claims.

Jennings' pleading of punitive damages is as follows:

[Jennings] alleges that the tortious conduct of [Aztec] ... was willful and oppressive and/or constituted a conscious indifference by [Aztec] to [Jennings'] rights and welfare. Because of the nature of such conduct and the injury and damage it has caused [Jennings, Jennings] seeks exemplary damages from [Aztec] in the amount of $250,000 or in such amount as will have a curative effect on [Aztec] and deter it from such conduct in the future.

As this Court understands, Jennings' suit for breach of the insurance contract was tried and the district court rendered judgment for Jennings upon a jury verdict. The district court reserved the balance of Jennings' claims for separate trial at such time as discovery was complete.

In pursuit of his extra-contractual claims, Jennings filed a request for discovery and production seeking two categories of Aztec's documents. First, the request sought production of a "claims denial journal" which contains entries for the years 1977 to date.[1] Second, the request called for production of all files maintained by Aztec which related to claims which had been denied under the same pre-existing illness or condition exclusion under which Jennings' claim had been denied. Aztec refused to produce the requested documents.

After hearing, the district court initially denied both requests for production, but in response to Jennings' "motion for reconsideration," the district court ordered production of the claims denial journal; however, he again refused to order production of the specified claims files. The district court did not make an *in camera* examination of

---

1. The claims denial journal reveals the names of Aztec's insureds who have had claims denied, their business dealings with Aztec, their physical or mental illnesses and injuries, and their insurance policy numbers. Apparently, the policy claimants' addresses are not contained in this document.

the claims denial journal before he signed the indicated order.

Aztec seeks a writ of mandamus from this Court ordering the district court to vacate its order granting discovery of the claims denial journal. Jennings, on the other hand, seeks a writ of mandamus directing the district court to vacate its order denying production of claims files in which the claims had been denied upon the basis of the pre-existing illness or condition exclusion.

■ Mandamus to compel a court to vacate or expunge a void order is a commonly used procedural vehicle to attack discovery orders. An order is deemed void when rendered by a court having no jurisdiction or authority, *State v. Ferguson*, 133 Tex. 60, 125 S.W.2d 272 (1939), as when the order is violative of some constitutional right of a party, or when it is rendered as a result of an abuse of discretion by a judicial officer. Norvell & Sutton, *The Original Writ of Mandamus in the Supreme Court of Texas*, 1 St. Mary's L.J. 177, 181 (1969). The power of the Supreme Court or a Court of Appeals to require vacation of a *void* order derives from Tex.Rev.Civ. Stat.Ann. art. 1733 and art. 1824 (Supp. 1983 and 1964). It is settled now that the Supreme Court or court of appeals may direct a writ of mandamus to issue to correct a clear abuse of discretion by a trial court in a discovery proceeding. *Barker v. Dunham*, 551 S.W.2d 41, 42 (Tex.1977); *Houdaille Industries, Inc. v. Cunningham*, 502 S.W.2d 544 (Tex.1973); *Maresca v. Marks*, 362 S.W.2d 299 (Tex.1962); *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434 (1959); *Zenith Radio Corporation v. Clark*, 665 S.W.2d 804 (Tex.App.—Austin 1983). This is so, even when the district court's order denies discovery rather than permits it. *Allen v. Humphreys*, 559 S.W.2d 798 (Tex.1977); *Barker v. Dunham, supra.*

Discovery pursuant to Rule 167 is governed by the limitations provided in Rule 186a. Texas R.Civ.P.Ann. 186a expresses the general policy that all relevant matters are discoverable. The Rule then sets out the standard of relevance as it relates to

discovery proceedings as follows: "It is not ground for objection that the [document sought] will not be admissible at the trial of the cause ... if the [document] sought appears reasonably calculated to relate to the discovery of evidence admissible at such trial." The general rule in favor of discovery in Rule 186a is then made subject to five sub-provisos in which discovery is not permitted. As we understand Aztec's basic position, it is that discovery is not permissible because of the claimed irrelevance of the material in the claims denial journal or in the claims files to any of Jennings' extra-contractual claims.

Jennings urges that information from files which the company has denied upon the basis of the pre-existing illness or condition exclusion may well be relevant in proving up his claim that Aztec has been guilty of unfair or deceptive acts in the business of insurance. Jennings maintains that it is necessary to discover the claims denial journal since from the journal the basis upon which each claim was denied may be disclosed. At oral argument Aztec's counsel estimated that there were approximately one hundred claims denied upon the basis of the pre-existing illness or condition exclusion.

The pre-existing illness or condition exclusion provides as follows:

This Certificate does not provide any benefits for a period of continuous total disability resulting from any of the following: (1) a pre-existing illness, disease or physical condition for which medical diagnosis or treatment was received within the six-months preceding the effective date of this Certificate and which caused a period of continuous total disability as defined herein within the six-months following the effective date of this Certificate....

Jennings insists that the pre-existing illness or condition exclusion is subject to being consistently misapplied to the medical facts surrounding disability claims in the absence of a vigorous careful, fair and reasonable investigation to determine both (a) when and for what diagnosis or treat-

ment occurred *and* (b) whether the condition so diagnosed or treated actually caused disability.

Jennings claims that the possibility of easy misapplication of the exclusion and the further possibility of establishing an objectively verifiable pattern in Aztec's claims handling procedures make the requested claims files especially relevant to Jennings' extra-contractual causes of action. Jennings' argument continues: "Aztec's claims handling in connection with the [exclusion] is a decision-making process that places a high premium on analysis and the exercise of judgment. Built into the procedure is the danger of a subjective and self-serving evaluation of medical data that, when applied to the technical language of the exception, may demonstrably lead to an inordinate number of improper disability claims denials. How claims decisions are made generally within the scope of the [exclusion] bears heavily upon how a decision was made in any particular case."

Jennings suggests, in addition, that the subject claims files are relevant to his claim for exemplary damages.

■ This Court has concluded that Aztec should be ordered to produce those files in which the company's denial of the claim was predicated upon the pre-existing illness or condition exclusion in that those files may well contain information relevant to Jennings' claim that Aztec was engaged in a course of dealing that was unfair or deceptive in the business of insurance. It is true, as suggested by Aztec, that Jennings would have the opportunity to show a violation under art. 21.21 by proof of the single transaction in which the company denied his claim for benefits. Accordingly, argues Aztec, there is no occasion for Jennings to obtain discovery of the claims files. On the other hand, this Court knows of no bar to the admission of evidence, if such exists, that Aztec had consistently denied claims upon the basis of the exclusion without reasonable investigation. Such character of evidence is generally admissible when the other acts are so closely connected with the act charged so as to disclose a plan or scheme. 2 Ray, Texas Law of Evidence § 1522 (3rd ed. 1980). Moreover, a showing that Aztec consistently follows such a claims practice could be relevant as tending to show that the company had purposely denied Jennings' claim without reasonable investigation.

Aztec submits that *Commercial Travelers Life Ins. Co. v. Spears*, 484 S.W.2d 577 (Tex.1972) controls our disposition of the petitions for writs of mandamus. Aztec suggests that the opinion is supportive of the proposition that "[i]nformation concerning third party insurance claims is simply not relevant to causes of action based upon the handling of individual insurance claims and mere allegations of fraud, malicious conduct, etc. do not make them relevant." As is already clear, this Court does agree with Aztec's reading of *Commercial Travelers Life Ins. Co.* In *Commercial Travelers Life Ins. Co.*, Rose Richter sued the insurance company for benefits under a hospitalization policy. The insurance company denied the benefits allegedly for the reason that it was not obligated to pay benefits to the insured for which the insured had already been compensated by Medicare. Rose Richter sued individually and as class representative on behalf of other policyholders whose claims had been denied on the same ground as Rose Richter's claim. While the suit was pending, and during discovery, the district court of Bexar County directed discovery of the insurance claims files to obtain the names and addresses of policyholders whose claims had been denied for the same reason that the company had denied Rose Richter's claim.

As we read the opinion, the Supreme Court addresses only the issue of whether the suit below had the necessary characteristics of a class action pursuant to Tex.R. Civ.P.Ann. 42 (1979). The Supreme Court concluded that Rose Richter's suit was a "spurious" class action, and therefore not maintainable.

Aztec's evidence at the hearing on the motion for production was that in some of the claims files there was information of a highly personal nature which should not be

revealed to Jennings or to anyone else. This Court, of course, is concerned that the privacy of those persons remain undisturbed. The problem of privacy may best be handled, we believe, by an *in camera* inspection of the indicated files by the district court and the issuance of a protective order, if needed. *Crane v. Tunks, supra; Zenith Radio Corporation v. Clark, supra.*

As this Court understands, the claims denial journal is no more than an index identifying the name of each claimant, the date of each claim, and the policy exclusion under which each claim was denied. We understand further that by use of the journal, it is possible within a short time to identify those claims which the company denied pursuant to the pre-existing illness or condition exclusion. To our knowledge, there is no privileged information contained in the claims denial journal.

■ With the record in its present condition, this Court has determined that it was not an abuse of discretion for the district court to order Aztec to produce the claims denial journal, and, accordingly, will deny Aztec's petition for writ of mandamus. This Court has concluded further that it was an abuse of discretion for the district court to deny Jennings' motion for production of the claims files in which the insureds' claims were denied upon the basis of the pre-existing illness or condition exclusion.

The district court should: (1) set aside the order denying production of those claims files denied upon the basis of the pre-existing illness or condition exclusion; and (2) examine those files, before making them available to Jennings' counsel, to determine whether or not the files contain privileged matter or other non-discoverable matters, and, if so, enter appropriate protective orders; [2] and (3) after examination, enter an order requiring production of those files deemed discoverable. This Court assumes that Judge Dellana will comply promptly. In the event he fails to do so, a writ of mandamus will issue.

**2.** The district court may wish to consider assessment of costs of the *in camera* inspection

against Jennings. Tex.R.Civ.P. Ann. 167(3) and 186b (1983).