**PARAMOUNT NATIONAL LIFE INSURANCE COMPANY,**
Appellant,

v.

**Frankie WILLIAMS, Appellee.**

**No. C14–87–00297–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 25, 1989.

Rehearing Denied June 22, 1989.

Opinion Following Remittitur July 13, 1989.

Grant Gealy, Galveston, for appellant.
Alton C. Todd, Alvin, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

### OPINION

PAUL PRESSLER, Justice.

Appellee sued after the denial of two claims and the cancellation of her medical insurance policy. The jury found all issues in her favor, and the trial court entered judgment for actual damages of $48,281.94, exemplary damages of $500,000 and attorney's fees. We modify the judgment to award a twelve percent penalty pursuant to TEX.INS.CODE ANN. art. 3.62 (Vernon 1981). We further order a remittitur of $250,000 in exemplary damages. Otherwise, we affirm the judgment of the trial court.

On March 5, 1981, insurance agent Cliff Cox met with Frankie Williams and her husband Willie and took an application for a hospital insurance policy to be issued by Paramount. Mrs. Williams was sixty-four and had a long history of medical problems which the couple described to Cox. Cox told the Williamses he needed to know only about the preceding five years. He filled out the application and had them read and sign it. Paramount approved the application and issued the policy on March 20, 1981. Mrs. Williams was hospitalized in July 1981 and again in December 1981. She filed two claims totaling over $40,000 in connection with these hospitalizations. Paramount denied the claims and cancelled the policy on the grounds that Mrs. Williams had failed to disclose her full medical history on the insurance application and that the conditions for which she was being treated were preexisting conditions. The company refunded her premiums. Mrs. Williams then sued Paramount for breach of contract, breach of the duty of good faith and fair dealing, fraud and violations of both the Texas Insurance Code and the Texas Deceptive Trade Prac-

tices Act. Based on the jury's answers to thirty-one special issues, the trial court entered judgment on the theory that afforded the greatest recovery. Paramount appeals that judgment with twenty-five points of error.

In its first point of error, Paramount argues that the trial court violated several evidentiary rules in admitting petitions, pleadings and discovery from lawsuits filed against Paramount, as well as complaints to the State Board of Insurance regarding the company's actions on claims of other insureds. The court admitted the evidence "not for the truth of the matter stated therein, but for the purpose of aiding you, if they do, in determining whether the Defendant has a custom of denying things because of prior existing medical conditions."

Paramount contends the extraneous litigation and complaints had no probative value because Mrs. Williams tendered no evidence that in those instances Paramount asserted the defense of prior existing medical conditions without reasonable investigation or without just cause. Paramount maintains such evidence is necessary, citing us to language in *Aztec Life Ins. Co. of Texas v. Dellana,* a mandamus proceeding. 667 S.W.2d 911, 915 (Tex.App.—Austin 1984, no writ). In *Aztec* the court ordered the discovery of denied claims of other insureds and made this comment about the relevancy of the denied claims:

On the other hand, this Court knows of no bar to the admission of evidence, if such exists, that Aztec had consistently denied claims upon the basis of the exclusion *without reasonable investigation.* (emphasis added)

Mrs. Williams, on the other hand, contends the evidence was admissible to prove several of her causes of action. Her argument closely parallels that made by the court in *Underwriters Life Ins. Co. v. Cobb,* 746 S.W.2d 810, 815 (Tex.App.—Corpus Christi 1988, no writ). That court approved the admission of letters from Underwriters denying other claims about the same time and on the same basis as its denial of the subject claim as well as the

company's log of complaints filed against its agents. Although Underwriters contended the evidence was immaterial, irrelevant and highly prejudicial, the court found the following:

Underwriters' denial of other claims around the same time as its denial of the Cobbs' claim, and on the same basis, was admissible to show that Underwriters' refusal to pay the Cobbs' claim was " 'commit[ted] or perform[ed] with such frequency as to indicate a general business practice.' " *Chitsey, [v. National Lloyds Ins. Co.]* 738 S.W.2d [641] at 643. Such a showing was necessary to recover under the Cobbs' pleaded cause of action for breach of Underwriters' duty to reasonably investigate. *Id.* It is also relevant and material under *Arnold* to prove the Cobbs' cause of action for Underwriters' breach of duty of good faith and fair dealing; these routine denials on the same grounds were sufficiently similar to indicate a failure by Underwriters to determine whether there was any basis to deny the Cobbs' claim. *See Arnold, [v. Nat. County Mut. Fire Ins. Co.]* 725 S.W.2d [165] at 167. (additional citations omitted)

Based on the rationale of *Cobb* and the trial court's limiting instruction, the evidence was properly admitted. In the *Aztec* case, the court noted that the evidence in dispute "is generally admissible when the other acts are so closely connected with the act charged so as to disclose a plan or scheme." 667 S.W.2d at 915. The court also stated that a showing that Aztec consistently followed such a claims practice could be relevant as tending to show that the company had purposely denied the subject claim without reasonable investigation. *Id.* Furthermore, Paramount had the opportunity to refute or mitigate the evidence of the lawsuits and complaints and show if there had been some favorable resolution. The relevancy of the evidence outweighed any prejudicial effect. Point of error one is overruled.

In point of error two, Paramount challenges the legal and factual sufficiency of the evidence to support the jury's answers to Special Issues Nos. 2 and 4. In addition, it asserts that the trial court erred in submitting Special Issue No. 4 because, as a matter of law, Cliff Cox was Mrs. Williams' agent, his acts could not bind Paramount and there could be no issue of apparent authority. In reviewing a "no evidence" point, this court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In deciding an "insufficient evidence" point, we must consider and weigh all the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Paramount denies there was a breach of contract. It alleged that it rejected Mrs. Williams' two hospital claims on the basis that the conditions for which she was being treated (primarily colon-related) did not comply with the definition of sickness under the policy as well as her failure to disclose preexisting medical conditions. Paramount claims that certain language in the documents relating to the policy puts the applicant on notice that accurate and complete information is required. On her application Mrs. Williams stated she was in good health and free from any physical or mental defects and her only prior medical problems were a kidney stone in 1952 and a cancerous uterus in 1975, both with full recovery. However, the evidence showed Mrs. Williams had experienced numerous physical and mental problems, including the removal of a kidney stone, colitis, possible diverticulitis, recurring pneumonia and schizophrenia. Paramount's president testified that had the company been aware of Mrs. Williams' complete medical history, the policy would not have been issued.

Paramount also contends that there was no breach with regard to Mrs. Williams' first claim because the claim involved a hernia. The policy specifically excluded a sickness or disorder involving a hernia occurring within six months of the date of the policy. Paramount, however, asserts this argument somewhat late. The hernia exclusion was not mentioned as a reason for denying the claim in any correspon-

dence from the company to either Mrs. Williams or her attorney.

Although Paramount feels it had legitimate reasons to deny Mrs. Williams' claims and, therefore, did not breach the insurance contract, the primary issue is what occurred when agent Cox took the application for the policy. Mrs. Williams does not contest Paramount's description of her medical history. She contends she disclosed it all to Cox but that he told her he needed to know only about the preceding five years. He then filled out the application with the information he deemed pertinent, and Mrs. Williams initialed the answers and signed it.

Paramount notes that Mrs. Williams signed a document, the Confirmation of Presentation, which was a representation by her to Paramount acknowledging the terms of the contract and the limitations on Cox's authority. Paramount also maintains that while the insurance agent acts for the carrier in delivering the policy and collecting the premiums, he acts for the insured in making the application for the insurance and in processing the policy. Thus, in taking Mrs. Williams' application, Cox was acting on her behalf, and if any misrepresentation was made, it is not attributable to Paramount but to Mrs. Williams. Paramount classifies Cox as a soliciting agent and states that as a matter of law, the acts of a soliciting agent cannot bind the insurance carrier. The company also argues that Mrs. Williams cannot bind Paramount to Cox's alleged misrepresentations on an apparent authority theory.

The Texas Insurance Code divides insurance agents into two categories, local recording agents and soliciting agents. Tex. Ins.Code Ann. art. 21.14, § 2 (Vernon 1981). While both types of agents may solicit insurance, a soliciting agent's authority is more limited than that of a local recording agent. *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 693 (Tex. 1979). However, that limitation on authority does not completely shield the insurer.

It has been held that a soliciting agent has no authority to make a contract on behalf of an insurer or to waive the terms of a policy. Similarly, a soliciting agent whose authority is limited to receiving and forwarding applications of insurance cannot bind an insurer by his misrepresentations. Even if a soliciting agent cannot alter a policy as a matter of law, under certain circumstances his acts will make an insurer liable under section 17.50 of the DTPA and article 21.21 of the Texas Insurance Code.

von Kreisler, *A Survey of Insurance Litigation under the Texas Deceptive Trade Practices Act*, 18 Tex.Tech.L.Rev. 177, 185 (1987).

■ Absent actual authority, liability may still arise if the agent had apparent authority to act for the carrier. *Guthrie v. Republic Nat'l Life Ins. Co.*, 682 S.W.2d 634, 637 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *see also Lucadou v. Time Ins. Co.*, 758 S.W.2d 886, 888 (Tex. App.—Houston [14th Dist.] 1988, no writ); *Tidelands Life Ins. Co. v. Franco*, 711 S.W.2d 728 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Tidelands Life Ins. Co. v. Harris*, 675 S.W.2d 224 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Apparent authority arises when the principal clothes the agent with the appearance of authority or fails to exercise diligence to prevent the agent from appearing to have authority. *Underwriters v. Cobb*, 746 S.W.2d at 819–20; *see also Guthrie*, 682 S.W.2d at 637 (for expanded discussion of apparent authority).

■ Here Paramount sells its policies through general agents who function as independent contractors. Those agents hire sub agents, who in turn may hire other people to work under them. Keith Wood is a general agent for Paramount. At the time he took the Williamses' application, Cliff Cox was employed by the Stan Firebaugh Agency, a sub agent for Wood located in the same two-story building as Paramount. Paramount sponsored Cox for his license and filed a form certifying that he would complete a forty-hour course conducted by Paramount by February 13, 1981.

Cox used Paramount forms when he took the application from Mrs. Williams. He signed the Confirmation of Presentation

document as "Agent." The document itself, which purports to ensure that there is a "complete and clear understanding between the parties," was signed following the application visit, and refers throughout to Cox's relationship to Paramount as "your agent." For example, one paragraph reads, "Upon my request, your agent, whose signature appears below, visited with me to determine my interest in applying for insurance with your company." The receipt for the initial premium was signed for Paramount by Cox as "Duly Licensed Representative."

Mrs. Williams was sixty-four when she applied for the policy. Two of her physicians testified that the Williamses were not well-educated people. Neither doctor thought the couple understood much when the doctors tried to explain her treatment. It is therefore unreasonable to expect Mrs. Williams to comprehend the limit of the authority of the agent who takes her application for a policy with a specific insurance company, particularly when that company refers to him in its documents as its agent. A statement in the Confirmation of Presentation that the company "is not bound by any knowledge of or statements made by or to the agent" does little to negate the apparent authority with which the company had clothed the agent.

There was sufficient evidence to support the jury's answer to Special Issue No. 4 that Cox had apparent authority to bind Paramount; his misrepresentations are attributable to Paramount; and Paramount breached the insurance contract by its failure to pay Mrs. Williams' claims. Had the Williamses not believed she was insured, they could have made different arrangements for her treatment. Point of error two is overruled.

Paramount's next two points of error also concern Special Issues Nos. 2 and 4. In point of error three, the company contends that the trial court erred in submitting Special Issue No. 4 as drafted and that the jury's finding on that issue is legally insufficient to establish liability. Paramount objects to the language "acting by and through its agents" and argues that

only the acts of the principal can create apparent authority. Paramount also argues that it was error to ask whether Cox had "the authority he purported to exercise" since what authority he actually exercised was in dispute.

■ A corporation can act only through its officers or agents. *W.T. Grant Co. v. Wilson Industries, Inc.*, 346 S.W.2d 629, 630 (Tex.Civ.App.—Texarkana 1961, writ ref'd n.r.e.). The acts of its officers or agents can create apparent authority. Apparent authority is conferred on an insurance agent when the carrier commits actions that, either intentionally or negligently, induce a third person to believe the agent has the authority he claims to have. *Guthrie v. Republic Nat'l.*, 682 S.W.2d at 637. In this case, Paramount attempted to protect itself with the statement that the company was not to be bound by any knowledge of or statement made by or to Cox unless set forth on the application. However, the company's actions in giving Cox its forms and referring to him as its agent effectively contradicted this attempt to limit his authority.

To the Williamses, Cox represented Paramount. If he told them he needed a medical history for only a certain period, they could understandably rely on that statement and assume that Mrs. Williams was insured. While the testimony differed as to who told what to whom, the jury evidently believed the Williamses. The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Special Issue No. 4 correctly directed the jury's attention to the acts of Paramount as to Cox's apparent authority. Point of error three is overruled.

■ Special Issue No. 2 asked the jury whether there was a breach of "the contract identified as the Catastrophic Hospital Expense Policy." In its fourth point of error, Paramount argues that the contract actually consisted of not just the policy itself but also the application, the Confirmation of Presentation and the Presenta-

tion and Application Review, all of which contained notices to the applicant. Paramount claims that not to include these other documents as part of the contract constitutes a direct comment on the weight of the evidence. The company also complains that the trial court did not give the jury a definition of breach of contract.

There is a question as to whether Special Issue No. 2 was drafted with the intent of excluding these other documents from consideration as part of the contract and whether it had that effect on the jury. The jury had those documents before it and had ample opportunity to weigh their impact on what transpired between Cox and the Williamses. Any error in this wording of the issue was harmless. Paramount did not tender a substantially correct definition of breach of contract to the court and may not now complain on appeal. *Lifestyle Energy Corp. v. John Wilson Drilling Co.*, 611 S.W.2d 709, 710–11 (Tex.Civ.App.—El Paso 1980, no writ); Tex.R.Civ.P. 278. Point of error four is overruled.

In point of error five, Paramount objects to the jury's answers to Special Issues Nos. 6a, b, c, d and 21. Special Issue No. 6 and its subparts concern the Williamses' allegations of DTPA and Tex.Ins.Code Ann. art. 21.21 violations. In its judgment, the trial court disallowed treble damages because an award of both exemplary and treble damages would constitute a double recovery for the same acts or conduct. Since the award of exemplary damages is affirmed, we will address only those points of error that are germane to the issues. Special Issue No. 21, which asked whether Paramount intentionally misrepresented the terms and conditions of the insurance policy, establishes Paramount's liability for common law fraud. This issue is only one of several that provide a predicate for the award of exemplary damages. It is therefore not dispositive and will not be addressed. Point of error five is overruled.

In point of error six, Paramount challenges the jury's answer to Special Issue No. 8, which asked whether Paramount's conduct in relation to Special Issue No. 6 and the DTPA and article 21.21 misrepre-

sentations was done knowingly. Again, as judgment was not entered under the DTPA or article 21.21, this point of error is not dispositive and is therefore overruled.

In point of error seven, Paramount complains that the evidence was legally and factually insufficient to support the jury's affirmative response to Special Issue No. 9, which asked the following:

> Do you find from a preponderance of the evidence that Defendant, Paramount National Life Insurance Company, acting by and through its agents or employees, has a common scheme and design of selectively and prejudicially handling its claims with the purpose of avoiding liability by routinely and customarily utilizing the defense of pre-existing conditions as an exclusion under the policy and as a basis upon which to avoid liability?

Paramount argues that the only evidence relating to the issue was that to which Paramount objected in point of error one, and if this evidence were ruled inadmissible, there would be no evidence to support the jury's finding. This evidence has been held admissible above. Point of error seven is overruled.

■ In point of error eight, Paramount attacks the lack of an issue on producing or proximate cause to support the jury's findings to Special Issues Nos. 11, 12 and 13. Those issues address unfair insurance practices and the question of unconscionable conduct. In the very brief discussion accompanying this point of error, Paramount fails to cite any authority and says only that such an issue is a critical element to the causes of action addressed in the special issues. Points of error not supported by argument and authorities are waived. *Hughes v. Houston Northwest Medical Center, Inc.*, 680 S.W.2d 838, 843 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), *cert denied*, 474 U.S. 1020, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985); Tex.R.App.P. 74(f). Point of error eight is overruled.

Paramount next challenges the sufficiency of the evidence to support the jury's answers to Special Issues Nos. 11, 12 and 13 and also questions the definition of "unfair practice" as the term is used in Issues

11 and 12. Special Issue No. 11 asked if the handling of Mrs. Williams' insurance application by Paramount, through its agents or employees, was an unfair practice in the business of insurance. Special Issue No. 12 asked if Paramount's denial of her claims was an unfair practice in the business of insurance. Special Issue No. 13 asked if the conduct of Paramount, acting by and through its agents or employees, constituted an unconscionable action or course of conduct. Again as recovery may be predicated on Paramount's breach of the insurance contract, only those points of error that are germane to that ground of recovery will be addressed. Thus, points of error nine, ten and eleven are overruled.

 In point of error twelve, Paramount complains of Special Issue No. 14, in which the jury was asked whether Paramount, acting by and through its agents or employees, breached its duty of good faith and fair dealing in the way it handled one or more of Mrs. Williams' claims. In point of error twelve, Paramount objects to the issue on several grounds, including legal and factual sufficiency of the evidence. In *Arnold v. National County Mutual Fire Ins. Co.*, the Supreme Court recognized a duty on the part of insurers to deal fairly and in good faith with their insureds. 725 S.W.2d 165, 167 (Tex.1987). Such a duty may arise as a result of a special relationship between the parties to a contract. In the insurance context a special relationship arises out of the parties' unequal bargaining power and the potential for unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims. *Id.* A cause of action for breach of the duty of good faith and fair dealing exists when there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay. *Id.*

Mrs. Williams contends an investigation by Paramount would have disclosed that any problem with Mrs. Williams' application was not due to her failure to make a full disclosure but to its agent's failure to complete the application accurately and fully. She also argues there was no reasonable basis for denying the July and December hospitalization claims because they were not caused by preexisting conditions.

Pursuant to the terms of the policy, Paramount requires that when its insureds file a claim, they file a proof of loss claim form. These forms are sent to the insureds when the policy is issued. Paramount first received notice of the July 1981 claim on August 14 by way of a hospital insurance form, but the company received no proof of loss form from Mrs. Williams. Two months later she called to inquire about her claim. At that time, Paramount sent her a proof of loss form and requested her medical records. Once Paramount determined that there were discrepancies in the application, the claim form and the medical records, the company denied the claim and cancelled the policy.

In a letter written April 13, 1982, Mrs. Williams' attorney stated that "[t]he application was fully and completely filed and all representations concerning the prior medical condition of Frankie Williams was [sic] made to your agent, Cliff Cox." Yet Paramount did not pursue the possibility of a problem in the application process even though the application had been taken by an inexperienced agent. Instead, in correspondence with the attorney, the claims department representative repeatedly reiterated the company's position that Mrs. Williams had failed to disclose her complete medical history.

The jury was told that the December hospitalization was due to a perforated colon that occurred no more than twenty-four hours prior to her admission. Neither of Mrs. Williams' doctors was able to state absolutely that this condition was related to a preexisting one. Thus, whether Paramount had a reasonable basis for denying that claim was at issue, and there was evidence to support the jury's conclusion that it did not.

In this point of error, Paramount also objects to the trial court's failure to grant a continuance after Mrs. Williams was allowed to amend her pleadings regarding

the breach of the duty of good faith and fair dealing. This assertion is not supported by argument and authorities and is waived. *Hughes v. Houston Northwest Medical Center, Inc.*, 680 S.W.2d at 843. Finally, Paramount argues that the trial court erred in not defining breach of the duty of good faith and fair dealing. Paramount did not make that particular objection at trial, and the complaint is therefore waived. TEX.R.CIV.P. 274. Point of error twelve is overruled.

In point of error thirteen, Paramount complains that the jury's answer to Special Issue No. 16 was not supported by any evidence or, alternatively, by factually insufficient evidence and that the trial court abused its discretion in submitting the issue and denying Paramount's motion for continuance. Special Issue No. 16 asked whether Paramount waived its right to cancel Mrs. Williams' policy.

After both parties had rested, the court allowed Mrs. Williams to amend her pleadings to allege that Paramount waived its right to cancel her insurance policy. Paramount's attorney then stated only, "Defendant moves for a continuance at this time." The trial court has broad discretion to grant or deny motions for continuance, and its action will not be disturbed unless the record shows a clear abuse of discretion. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex.1986). Paramount's request for a continuance did not allege surprise or prejudice and thus did not clearly inform the court of the basis or the need for the relief it sought. A decision that had to be made without this claim's being set forth cannot be said to be arbitrary or unreasonable. The trial court did not abuse its discretion when it denied the motion.

Paramount also argues that as a matter of law it did not waive its right to cancel Mrs. Williams' policy because the company had ninety days from the discovery of the falsity of the representations on the application to give her notice that it was going to rescind the policy. TEX.INS. CODE ANN. art. 21.17 (Vernon 1981). Paramount asserts it did not receive her hospital records until January 21, 1982. The company then rescinded the policy by letter dated March 25, 1982, well within the ninety day period.

The statutory notice required by article 21.17 is an essential element of a defense based on misrepresentation. *Prudential Ins. Co. of America v. Torres*, 449 S.W.2d 335, 337 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.). The burden was therefore on Paramount to establish that January 21, 1982, was indeed the date on which it learned of the misrepresentations. We note that Paramount received some hospital records reflecting a diagnosis as early as August 12, 1981. Also, Mrs. Williams filed a claim form for the first hospitalization indicating she had suffered from colon trouble for the previous two years. We cannot say from this record that Paramount established as a matter of law that the denial letter was written within the ninety day period. Indeed, there was evidence to support the jury's finding to the contrary.

In addition, Paramount did not request an issue to establish this essential element of its case, and it thereby waived such a determination under TEX.R.CIV.P. 279. *Prudential v. Torres*, 449 S.W.2d at 338.

Paramount further asserts Mrs. Williams tendered no evidence, or in the alternative, insufficient evidence that it did any acts constituting waiver as defined by the trial court. Paramount particularly objects to this language:

> In connection with this Special Issue, you are instructed "waived" as used in this issue means to relinquish intentionally a known right or intentionally do an act or acts inconsistent with claiming it.

Paramount claims there is no evidence that it ever intentionally relinquished anything. However, the trial court further instructed the jury that "[w]aiver may not be intended in fact, but may arise from the acts of the party charged with it...." The jury could thus infer waiver from Paramount's actions in handling Mrs. Williams' claim. Point of error thirteen is overruled.

In response to Special Issue No. 17, parts "a" and "d," the jury awarded Mrs. Williams $40,281.14 in past medical expenses and $4,000 for damage to credit in the past. In point of error fourteen, Paramount argues that Mrs. Williams presented no evidence that she had actually incurred damages from the denial of the hospitalization claims as those bills were not paid and were eventually written off as bad debts. She offered no evidence that she had ever been denied credit or suffered any damages because of her credit rating.

■ Paramount's argument concerning the medical expenses is not supported by any authority. Mrs. Williams submitted proof of the amounts incurred. Furthermore, Mr. Williams testified that he had paid the deductible on at least one of the hospital stays, the $396 anesthesiology bill and whatever he could to Drs. Markey and Rogers. The only testimony of the debts being written off was Mr. Williams' statement that when he explained his problem to one collection agency that contacted him, he was told that as long as a lawsuit was on file, he would not be bothered. We find there is evidence to support the jury's award of medical expenses.

■ Actual damages for loss of credit or injury to credit reputation in an action for breach of contract may be recovered when there is evidence that loss of credit was a natural, probable and foreseeable consequence of the defendant's breach. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 688 (Tex.1981). During his testimony, Mr. Williams identified notice letters from three different bill collectors regarding doctor and hospital bills arising out of the two hospitalizations. These letters are certainly evidence of injury to credit reputation, and we uphold the award of damages for this injury. Point of error fourteen is overruled.

In point of error fifteen, Paramount contests the award of attorney's fees in Special Issue No. 18. The company concedes attorney's fees are recoverable under three of Mrs. Williams' causes of action. However, Paramount argues she was not entitled to attorney's fees for work performed pursuing the cause of action for breach of the duty of good faith and fair dealing as that cause of action is a tort.

■ Ordinarily, when one or more causes of action for which attorney's fees are not permitted by statute or agreement are alleged in the petition, investigated and pursued at trial, it is incumbent upon the party asserting those causes of action to segregate them from those for which attorney's fees can be recovered. *Kosberg v. Brown*, 601 S.W.2d 414, 418 (Tex.Civ.App.–Houston [14th Dist.] 1980, no writ). However, an exception to this rule occurs when the causes of action involved in a suit are dependent upon the same set of facts or circumstances for their existence. *Village Mobile Homes, Inc. v. Porter*, 716 S.W.2d 543, 552 (Tex.App.–Austin 1986, writ ref'd n.r.e.) In this case the causes of action require proof of the same facts beginning with the policy application interview and continuing through the ultimate denial of the claims based on what occurred in that interview. Therefore, no segregation was necessary. Furthermore, although neither party makes this argument, it does not appear from the record that Paramount objected to Special Issue No. 18 on any grounds, much less the failure to segregate fees. Point of error fifteen is overruled.

In point of error sixteen, Paramount contests the legal and factual sufficiency of the evidence to support the jury's answers to Special Issues Nos. 20 and 23. Special Issue No. 20 asked whether Paramount ratified the conduct of Cliff Cox. The jury was instructed that "an insurance policy may be ratified by Paramount National Life Insurance Company though it had no knowledge originally of the unauthorized act of Cliff Cox if Paramount National Life Insurance Company retained the benefits of the transaction after acquiring full knowledge thereof." Special Issue No. 23 asked whether Paramount ratified or approved Cox's actions in taking the application from Mrs. Williams.

■ Paramount argues Mrs. Williams tendered no evidence that it had ever obtained knowledge of Cox's alleged

misrepresentations and that it retained no benefits of the transaction because it refunded all premiums previously paid under the policy when it determined that Mrs. Williams had failed to disclose her full medical history on the application. The critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the transaction and his actions in light of such knowledge. *Land Title Co. of Dallas v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex.1980). When it issued the hospitalization policy to Mrs. Williams, Paramount had before it the application form with the information that Mrs. Williams was sixty-four and that she had had kidney problems and a cancerous uterus removed. This information, coupled with Paramount's knowledge of the inexperience of agent Cox, should have put the company on notice that the "transaction" merited further investigation. Instead, Paramount accepted the initial premium payment, issued the policy and continued to accept payments until it cancelled the policy a year later. We hold that this is sufficient evidence of ratification. Point of error sixteen is overruled.

■ In point of error seventeen, Paramount attacks the legal and factual sufficiency of the evidence to support the jury's answer to Special Issue No. 22, which asked if Cox was unfit to take insurance applications and if Paramount was reckless in employing or retaining him. Paramount correctly asserts there was no evidence of bad behavior on Cox's part either before or during his employment. However, there is evidence to suggest that Cox was inexperienced and relatively untrained at the time he took the application from the Williamses and was therefore unfit to do so.

Although Cox had substantial sales experience, his job with the Firebaugh agency was his first in the insurance business. He testified that he was with the agency for only two to three months and took fifteen to twenty applications during that time. He applied for his insurance license on January 23, 1981, and met with the Williamses on March 5, 1981. He testified that "we had to go to classroom training on the product and how we were to present the product and that sort of thing." Paramount sent a form to the License Division of the State Board of Insurance stating that Cox would complete a forty-hour course conducted by Paramount by February 13, 1981. However, the company's Chairman of the Board testified that Paramount did not actually conduct such courses. This was in spite of the fact that Cox was using the company's forms and selling its insurance. Cox also testified that he went out with another agent a few times before he actually started selling insurance.

Whether Cox was experienced enough to conduct an application interview and whether he was sufficiently versed in Paramount's policies to know what he was allowed to do are valid issues. There was evidence to support the jury's answers that he was not. Paramount's recklessness could lie in not properly preparing Cox to sell its insurance. Point of error seventeen is overruled.

■ In point of error eighteen, Paramount argues that the jury's answer to Special Issue No. 24 is not supported either by any evidence or by insufficient evidence. The issue asked whether Paramount, acting by and through its agents or employees, acted recklessly or with malice. It served as a predicate for the recovery of exemplary damages under the theory of breach of the duty of good faith and fair dealing. The issue of agency and how the acts of Cox can bind Paramount have been discussed. There was evidence that Cox misrepresented to the Williamses what information needed to go on the application. There was also evidence of Paramount's failure to investigate a potential problem when it received an application indicating a risky medical history taken by a new and inexperienced agent. Thus, there was sufficient evidence to support an affirmative jury finding that Paramount acted with conscious indifference or wanton disregard of the rights of others. Point of error eighteen is overruled.

In point of error nineteen, Paramount attacks Special Issue No. 25 and the award of $500,000 in exemplary damages. The company contests the evidentiary basis for the award and argues further that it is excessive and is in violation of the Eighth Amendment of the United States Constitution which prohibits cruel and unusual punishment or excessive fines. Exemplary damages are recoverable for a breach of the duty of good faith and fair dealing under the same principles allowing the recovery of those damages in other tort actions. *Arnold v. National County Mutual*, 725 S.W.2d at 168. The jury found that Paramount acted recklessly or with malice, which shows conscious indifference to the rights of others. A finding of conscious indifference is sufficient for an award of exemplary damages. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex.1983). As previously detailed, there is sufficient evidence of Paramount's wrongdoing to support such an award.

The Eighth Amendment does not apply to an award of exemplary damages. *Underwriters v. Cobb*, 746 S.W.2d at 817. "However, the Eighth Amendment has traditionally been held to apply solely to the criminal process and not to matters out of the realm of punishment assessed for the conviction of crimes." *Id.* (citations omitted).

The standards for reviewing exemplary damages claimed to be excessive are set forth in *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908 (Tex.1981). Exemplary damages must be reasonably proportioned to actual damages. (Here the ratio is approximately 1:10.) Determining what is reasonable depends upon the facts of each case. Factors to consider are (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Id.* at 910.

The facts are set forth hereinabove. The basic question presented is whether the insurer or the insured is to be charged with the responsibility of the ignorance, negligence or mistake of the agent. *Prudential v. Torres*, 449 S.W.2d at 338. Exemplary damages are recoverable here, but the amount seems excessive in the light of the harm. The actions complained of result primarily from inexperience and lack of training. Consequently, if Mrs. Williams files in this court within fifteen days from the date of this opinion a remittitur of $250,000, we will reform the judgment and affirm. Otherwise, the judgment of the trial court, with respect to exemplary damages only, will be reversed and remanded. TEX.R.APP.P. 85(c). Point of error nineteen is overruled except to modify the amount of the award.

In point of error twenty, Paramount argues that there is no evidence or, in the alternative, insufficient evidence, to support the jury's answer to Special Issues Nos. 26 and 26a. Special Issue No. 26 asked whether Mrs. Williams obtained the insurance policy by material misrepresentation. Special Issue No. 26a asked whether she made a material misrepresentation in the application for the policy. The evidence concerning what was told to whom in the application interview has been discussed at length. There was conflicting testimony which created a question of fact for the jury. It was the jury's function to judge the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon*, 682 S.W.2d at 680. There was sufficient evidence to support the jury's answers to Special Issues Nos. 26 and 26a. Point of error twenty is overruled.

In point of error twenty-one, Paramount complains of the evidence for the jury's finding in Special Issue No. 27 that the treatment was not related to a sickness or disease that manifested itself prior to April 19, 1981. Dr. Markey, the physician who treated Mrs. Williams during that hospital stay, testified that once he performed surgery on her, he found that she had suffered an acute perforation of a sigmoid diverticulum. Mrs. Williams had suffered from abdominal pain for a long time. Par-

amount argues that this was due to diverticula disease and thus the hospitalization was related to a preexisting condition.

Dr. Markey also testified that her regular physician, Dr. Anders, had been unable to determine the reason for the pain and had alternated between diverticulitis and irritable bowel syndrome as the diagnosis. Based on the records, Dr. Markey stated he was not sure Dr. Anders "had ever established radiographically that she had diverticulitis." Dr. Markey was of the opinion that the perforation itself had occurred within twenty-four hours of her admission. Dr. Anders later confirmed that his diagnosis had varied between acute diverticulitis and irritable bowel syndrome and that he had never been able to make a definitive diagnosis. The evidence, therefore, did not clearly establish that the condition for which Mrs. Williams was hospitalized the second time was related to a preexisting condition. The jury's decision was reasonably based upon the evidence. Point of error twenty-one is overruled.

■■■ Point of error twenty-two concerns Mrs. Williams' hospitalization in July 1981. Paramount argues that the trial court erred in not submitting an issue on whether that hospitalization was related to a sickness or disease that first manifested itself prior to thirty days after the effective date of the policy. Mrs. Williams argues that in light of the jury's finding in answer to Special Issue No. 16, Paramount waived its right to cancel the policy and any affirmative finding by the jury on this issue would be immaterial. This is correct. *See S.I. Property Owners' Ass'n v. Pabst Corp.*, 714 S.W.2d 358, 360 (Tex.App.–Corpus Christi 1986, writ ref'd n.r.e.). Point of error twenty-two is overruled.

In point of error twenty-three, Paramount asserts that the trial court erred in not allowing a court reporter to be present for any bench conferences unless the court specifically so ordered. Paramount fails to cite any authority and, in support of the point, presents only a general statement that due to the court's action, the company was denied a record of bench conferences on nine occasions. Points of error not supported by argument and authorities are waived. *Hughes v. Houston Northwest Medical Center, Inc.*, 680 S.W.2d at 843. Paramount also fails to show how it was harmed by the absence of a record of the conferences. Point of error twenty-three is, therefore, overruled.

■■■ In point of error twenty-four, Paramount claims that the trial court erred in numerous rulings, each of which, or all taken together, constituted reversible error. In eight of the cited rulings, the court did not permit Paramount to ask certain questions of Mrs. Williams' husband. The two remaining rulings concern expert testimony by one of Mrs. Williams' attorneys and the admissibility of an exhibit. In this point of error, Paramount merely cites each ruling without argument or authorities. Also, Paramount fails to discuss how the rulings amounted to such a denial of its rights as to be reasonably calculated to cause, and probably did cause, an improper judgment. TEX.R.APP.P. 74(f) and 81(b)(1). Much of the evidence there excluded ultimately came into the record. Point of error twenty-four is overruled.

■■■ Paramount argues, in point of error twenty-five, that the trial court failed to review the charge properly. The record indicates that while the charge was being prepared, the following exchange took place:

THE COURT: Now, let the record reflect that a proposed charge of the court has been tendered to counsel for Plaintiff and counsel for the Defendant. Mr. Todd, have you had an opportunity to look at the proposed charge of the Court?

MR. TODD: I have.

THE COURT: Do you have objection to it?

MR. TODD: I have not.

THE COURT: Mr. Gealy, have you had an opportunity to look at the charge of the Court?

MR. GEALY: No, Your Honor.

THE COURT: How much time do you need to look at it?

MR. GEALY: Probably another hour or two.

THE COURT: You can look at the charge, Mr. Gealy, and I am going to

let you make all the objections you want. I'm going home. Mrs. DeSoto, I instruct you to stay here and listen to all the objections Mr. Gealy has. Mr. Todd, you are free to stay here and listen and agree to any of [sic] that you want to. Tell me in the morning, have a proposed charge ready in the morning, and I'll overrule....

MR. GEALY: Are you going to listen to the objections before you overrule?

At this point, the parties went off the record and when they returned, the judge asked Paramount's attorney when he would be ready to make an objection to the charge. He responded that he would be ready at 7:00 p.m. The judge then agreed to come back at that time. At 7:10 p.m., he proceeded to hear Paramount's objections and did so without further difficulty. While the trial court's initial reaction to hearing the objections was somewhat testy, the charge was finally reviewed and an adequate opportunity given for Paramount's counsel to state his objections. Thus there is no error on the court's part. Point of error twenty-five is overruled.

■ Mrs. Williams tenders two cross-points on appeal. In her first cross-point, she argues that the trial court erred in failing to award a twelve percent penalty pursuant to TEX.INS.CODE ANN. art. 3.62 (Vernon 1981). Basically, article 3.62 allows twelve percent on the amount of the loss if the insurance company liable for such loss fails to pay within thirty days of demand. Several courts have held that a recovery of both the penalty and treble or exemplary damages does not constitute a double recovery. *Mayo v. John Hancock Mutual Life Ins. Co. of Boston*, 711 S.W.2d 5 (Tex.1986); *Underwriters v. Cobb*, 746 S.W.2d at 821. Paramount has not responded to this point of error, and our research indicates no reason why the penalty should not be assessed. *See generally Gumpp v. Philadelphia Life Ins. Co.*, 562 S.W.2d 885, 888–89 (Tex.Civ.App.–San Antonio 1978, no writ). Therefore, Mrs. Williams' first cross-point is sustained, and the judgment is modified to provide for an additional recovery of twelve percent damages on the amount of the loss recovered under the judgment.

Mrs. Williams' second cross-point asks for judgment on her causes of action under the DTPA and article 21.21 of the Insurance Code should the trial court's judgment be reversed. As the trial court's judgment is affirmed, it is not necessary to reach this cross-point.

The judgment of the trial court is affirmed as modified and subject to the remittitur.

ELLIS, Justice, concurring and dissenting.

I concur in the majority's opinion. However, I respectfully dissent from the order to remit $250,000 in exemplary damages. This court is not a fact finder, and, thus, we may not pass on the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached on the evidence. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.–Dallas 1986, writ ref'd n.r.e.). The jury heard the evidence and justly determined exemplary damages to be in the amount of $500,000. After reviewing the record, I find the evidence to be more than sufficient to substantiate the jury's award, and I would affirm it. *See Larson v. Cactus Util. Co.*, 730 S.W.2d 640 (Tex.1987); *Pope v. Moore*, 711 S.W.2d 622 (Tex.1986).

OPINION FOLLOWING REMITTITUR

On May 25, 1989, we held that if appellee Frankie Williams filed a remittitur of $250,000, the judgment would be affirmed as modified.

The suggested remittitur has been filed. Therefore, the judgment of the trial court is modified by deducting $250,000 from the $500,000 in exemplary damages awarded to appellee under Special Issue No. 25.

The judgment in favor of appellees is otherwise affirmed.

ELLIS, J., continues to dissent from the order of remittitur.