**S.I. PROPERTY OWNERS' ASSOCIATION, INC., et al., Appellants,**

v.

**PABST CORPORATION, et al., Appellees.**

No. 13–85–256–CV.

Court of Appeals of Texas, Corpus Christi.

June 19, 1986.

Rehearing Denied Aug. 29, 1986.

Larry D. Woody, Victoria, for appellants.

Barry G. Flynn, Houston, Bert Huebner, Bay City, for appellees.

Before NYE, C.J., and DORSEY and KENNEDY, JJ.

## OPINION

DORSEY, Justice.

This appeal follows a take-nothing judgment against appellants and a judgment for $9,467.32 plus interest and costs for appellees on their counterclaim.

S.I. Property Owners' Association, Inc., a corporation composed of 107 property owners, brought suit against the Pabst Corporation, the Selkirk Island Corporation, the Estate of Julius Pabst and Elizabeth T. Pabst (widow of Julius Pabst), for misapplication and improper use of maintenance funds.

The Pabst Corporation and Selkirk Island Corporation were wholly owned by the Pabsts. After the death of Mr. Pabst, Mrs. Pabst became the president and sole stock-

holder of Selkirk Island Corporation. Selkirk Island Corporation is the owner and developer of Selkirk Island subdivision, through Selkirk Island Realty, which it owns, and for which Mrs. Pabst is the broker.

The deed restrictions on the property provided that a maintenance fee would be collected on each lot sold, and the funds would be used to maintain the amenities[1] and roads within the subdivision.

Appellants alleged that appellees had wasted, commingled, and misused the maintenance funds and they sued for breach of contract, fraud, waste and deceptive trade practices.[2] Appellants sought a constructive trust, the right to collect past and future maintenance funds, actual damages of $300,000.00 for road repairs, treble damages, exemplary damages, and attorneys' fees. In a counterclaim, appellees sought recovery of unpaid maintenance fees.

At the close of the evidence the trial court granted appellees' partial instructed verdict, which effectively dismissed Pabst Corporation, the Estate of Julius Pabst and Elizabeth T. Pabst. By its verdict, the jury found that Selkirk Island Corporation had exercised good faith judgment in its expenditures of the maintenance funds, that Selkirk Island Corporation had made an express warranty to use the maintenance funds in a reasonable manner, that this warranty was knowingly breached, that the breach produced actual damages, that actual damages to the amenities were "zero," that the necessary costs to restore the roads to the condition they would have been in but for the acts of appellees were $150,000.00, that exemplary damages were $75,000.00, and that attorneys' fees for appellants were $47,250.00.

Appellees filed a motion to disregard all but the first finding. The trial court granted the motion and ordered judgment for appellees on their counterclaim.

On appeal, appellants challenge the trial court's partial instructed verdict, the trial court's disregarding of special issue findings, and its refusal to submit several special issues.

■ We must first address appellees' Supplemental Counterpoint of Error Number One which alleges that S.I. Property Owners' Association, Inc., lacked standing to prosecute this suit and this appeal because its corporate charter and its right to sue in Texas courts had been forfeited. Although appellants' charter had lapsed, the point was not raised at trial and was waived. *Mercantile Mortgage Co. v. University Homes, Inc.,* 663 S.W.2d 45 (Tex. App.—Houston [14th Dist.] 1983, no writ); *Rimco Enterprises, Inc. v. Texas Electric Service Co.,* 599 S.W.2d 362 (Tex.Civ.App. —Fort Worth 1980, writ ref'd n.r.e.). Appellees' Supplemental Counterpoint of Error Number One is overruled.

Appellants' first point of error contends that the trial court erred in disregarding special issue findings and in granting judgment for appellees.

A trial court may disregard special issues that have no support in the evidence or which are immaterial. A special issue is immaterial when it should not have been submitted or when, though properly submitted, it has been rendered immaterial by other findings. *Blue Bell, Inc. v. Isbell,* 545 S.W.2d 563 (Tex.Civ.App.—El Paso 1976, no writ).

In determining whether there is evidence to support a jury finding, the court must consider the evidence in the light most favorable to the finding, considering only the evidence and inferences which support the finding and rejecting the evidence and inferences contrary to the finding. *Campbell v. Northwestern National Life Insurance Co.,* 573 S.W.2d 496, 497 (Tex.1978); *Genzer v. City of Mission,* 666 S.W.2d 116 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). "When the evidence offered to

---

1. The amenities referred to throughout this opinion include the swimming pool, boat ramp, fishing pier, and garbage collection.

2. TEX.BUS. & COM.CODE ANN. §§ 17.41—.63 (Vernon Supp.1986).

prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). If reasonable minds cannot differ that the evidence lacks probative force, it will be held to be the legal equivalent of no evidence. *Id.*

The trial court disregarded special issues four through eleven, in which the jury found an express warranty to spend the funds in a reasonable manner, the knowing breach of that warranty and resultant damages. The motion argued both "no support in the evidence" and "immateriality" of the special issues it sought to have disregarded. The judgment reflects only that the motion was granted, not the trial court's reason for granting it.

■ We have carefully examined the record and find no evidence to justify the submission of the issues on express warranty and conclude, therefore, that the trial court did not err in disregarding the answers to those special issues.

■ "An express warranty is entirely a matter of contract, wherein the seller may define or limit his obligation respecting the subject of the sale, and provide as to the manner of fulfilling the warranty or the measure of damages for its breach." *Donelson v. Fairmont Foods Co.,* 252 S.W.2d 796, 799 (Tex.Civ.App.—Waco 1952, writ ref'd n.r.e.); *Cravens v. Skinner,* 626 S.W.2d 173, 176 (Tex.App.—Fort Worth 1981, no writ). Above all, however, an express warranty must be explicit. The manner by which an express warranty may be created as to goods in accordance with § 2.313 of the Texas Business and Commerce Code (Vernon 1968) is inapplicable. Rather, the inquiry is whether there is evidence of an express warranty that the maintenance funds would be used in a reasonable manner.

Appellant relies on the testimony of three property owners and a recitation in a report prepared by the developer that was given to purchasers of lots as evidence of the express warranty. One testified that he was told the roads would be paved, another was told that the shell roads would be maintained by the maintenance committee, and the third was told that the maintenance fund would be used to keep up the roads and amenities. As we are not concerned with the sale of goods, we do not find that these representations rise to the level of a warranty that the maintenance funds would be used in a reasonable manner.

The only other evidence relied on by appellant to support the jury's finding of express warranty is contained in a report prepared by the developer in accordance with requirements of the U.S. Department of Housing and Urban Development (HUD) and distributed to prospective purchasers of lots in the subdivision. In a paragraph addressing the annual maintenance fee it is stated:

These funds are used to maintain the roads and recreational facilities and are payable to the Selkirk Island Improvement Committee which is responsible for maintenance of these facilities.

Elsewhere in the HUD Report are similar statements as to the use of the funds with the provision, "it being understood that the judgment of said committee in the expenditure of said fund shall be final so long as such judgment is exercised in *good faith.*" (Emphasis added.) There is no explicit statement that the funds would be used in a reasonable manner, nor is there any language that could be construed as an express warranty. The jury found that good faith had been exercised in the expenditure of the maintenance funds.

■ We find that there is no evidence that an express warranty was created and, therefore, the trial court did not err in disregarding the special issues that relied on such a finding.

Appellants' first point of error is overruled.

Appellants' second point of error alleges the trial court erred in granting a partial instructed verdict at the close of all the

evidence. A defendant is entitled to an instructed verdict only when there is no evidence to raise a fact issue, so there is no basis for submission of the issue to the jury. The appellate court must review all the evidence in the light most favorable to the non-movant and disregard all contrary evidence. *Vance v. My Apartment Steak House,* 677 S.W.2d 480, 483 (Tex.1984); *Voye v. Ragan,* 616 S.W.2d 673 (Tex.Civ. App.—Corpus Christi 1981, no writ).

The appellees orally moved for an instructed verdict at the close of appellants' evidence and again at the close of their own case. Appellees' original motion was quite lengthy and requested an instructed verdict as to Mrs. Pabst, the estate of Mr. Pabst, and the Pabst Corporation on several diverse grounds. Appellees' subsequent oral motion for instructed verdict reurged their earlier motion "especially under the theory of alter ego as to the cause of action for fraud and as to the cause of action of implied warranty." The trial court simply responded, "Granted."

Appellants argue that the court's ruling makes it very unclear just what the partial instructed verdict granted.

The judgment recites that the partial instructed verdict granted judgment that appellants take nothing against Mrs. Elizabeth T. Pabst, individually, or against the Estate of Julius Pabst; further, the court ordered that no cause of action for common law fraud could be submitted to the jury.

Appellants concede in their brief that "the Pabst Corporation was properly instructed out." Thus, we need not address this issue as to the Pabst Corporation.

■ Appellants alleged liability of appellees Elizabeth Pabst and the estate of Julius Pabst, deceased, based on the theory of alter ego. The courts of this State are reluctant to pierce the corporate veil and impose personal liability upon an individual and thereby destroy an important fiction under which so much of the business of the country is conducted, and will do so only under compelling circumstances. In order to disregard the corporate fiction and im-

pose individual liability under the alter ego doctrine, the proof must show that the individuals are using the corporate entity to perpetrate a fraud, avoid the effect of a statute, evade an existing obligation, protect crimes, achieve or perpetrate a monopoly, or justify a wrong. *William B. Roberts, Inc. v. McDrilling Co.,* 579 S.W.2d 335, 345 (Tex.Civ.App.—Corpus Christi 1979, no writ) (and cases cited therein). Moreover, the corporate entity may not be disregarded unless it is shown that the separateness of the corporation has ceased and adherence to the corporate fiction would sanction a fraud or foster an injustice. *Gentry v. Credit Plan Corp.,* 528 S.W.2d 571 (Tex.1975); *McDrilling,* 579 S.W.2d at 345–46; *Mortgage and Trust, Inc. v. Bonner & Co.,* 572 S.W.2d 344, 349 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

■ Although all stock in Selkirk Island Corporation was owned by Elizabeth T. Pabst and Julius Pabst, deceased, "the fact that a majority or even all of the stock in a corporation is owned by a single individual does not of itself constitute the corporation the alter ego of the individual." *McDrilling,* 579 S.W.2d at 346. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 361 (1960). There was no evidence to show that the separateness of the corporation had ceased or that adherence to the corporate fiction would sanction a fraud or foster an injustice, nor was there any evidence that would show that the corporation was used by Mr. and Mrs. Pabst to perpetrate a fraud, avoid the effect of a statute, evade an existing obligation, protect a crime, achieve or perpetrate a monopoly or justify a wrong.

Viewing the evidence in a light most favorable to appellants (the non-movants), we find that no evidence is revealed by the record which would justify the piercing of the corporate veil and holding Elizabeth T. Pabst, or the Estate of Julius Pabst, individually liable. The trial court properly granted appellees' motion for instructed verdict. Appellants' second point of error is overruled.

 Appellants' third point of error alleges "the trial court erred in refusing to submit a special issue on agency status." Appellants' fourth point of error alleges "the trial court erred in refusing to submit a special issue on whether the corporation was the alter ego of its sole stockholder."

The trial court granted a partial instructed verdict which effectively removed Mrs. Pabst and the Estate of Mr. Pabst from the lawsuit. Because the trial court did not err in granting this partial instructed verdict, neither did it err in its refusal to submit issues to the jury on parties that had been removed from the lawsuit.

Appellants' third and fourth points of error are overruled.

The judgment of the trial court is AFFIRMED.