**TCI CABLEVISION OF TEXAS, INC., Appellant,**

v.

**SOUTH TEXAS CABLE TELEVISION, INC., et al., Appellees.**

No. 13–89–428–CV.

Court of Appeals of Texas, Corpus Christi.

May 24, 1990.

Rehearing Overruled June 22, 1990.

James P. Karen, Jones, Day, Reavis & Pogue, Dallas, Richard J. Hatch, Sr., Prichard, Peeler, Cartwright & Hall, Corpus Christi, for appellant.

Charles R. Porter, Jr., Rick Foster, Mary E. Taylor, Porter, Rogers, Dahlman, Gordon & Lee, Herbert A. Jansen, Patteson, Post & Associates, Corpus Christi, for appellees.

Before NYE, C.J., and SEERDEN and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

TCI Cablevision of Texas, Inc. appeals a summary judgment favorable to South Texas Cable Television, Inc. and its shareholders in a suit for breach of contract, fraud and breach of express warranty. The suit was to recover a portion of the purchase price which it paid for certain assets of South Texas as well as the assets of other cable companies. Only TCI's suit against South Texas is before this court on appeal. We reverse the trial court's judgment and remand the case for trial.

TCI alleges that on April 4, 1986, it entered into an "AGREEMENT TO PURCHASE ASSETS" (Purchase Agreement) with South Texas and other cable companies. Pursuant to this Purchase Agreement, TCI agreed to purchase from South Texas and the other cable companies certain assets, including revenue units (cable television subscriptions) for $2,962,000.00. TCI claims that in accordance with paragraph 8.07 of the Purchase Agreement, South Texas and the other cable companies obligated themselves to deliver at least 5,180 revenue units at closing. Paragraph 8.07 provides that if fewer than 5,130 revenue units were delivered, the purchase price would be reduced by $780.00 for each revenue unit below 5,130. On the other hand, if there were more than 5,230 revenue units delivered, the purchase price would be increased by $780.00 for each revenue unit above 5,230.

On or about the closing date, April 14, 1986, South Texas and the other cable companies delivered certificates to TCI in which they represented that 5,343 revenue units (113 revenue units above 5,230) would be delivered to TCI. Therefore, TCI added $88,140.00 (113 × 780.00) to the purchase price. The total purchase price TCI paid under the Purchase Agreement was $3,050,140.00.

TCI alleges that at the closing, South Texas and the other cable companies only delivered 4,247 revenue units.[1] TCI claims that it did not discover this shortfall until after it paid the purchase price. TCI filed this lawsuit to recover $776,880.00. This figure includes $88,140.00 for the 113 additional revenue units and $688,740.00, reflecting a shortage of 883 revenue units below 5,130, at $780.00 per unit.

The movant for summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *R.I.O. Systems, Inc. v. Union Carbide Corp.,* 780 S.W.2d 489, 490 (Tex.App.—Corpus Christi 1989, writ denied). In deciding whether a disputed material fact issue exists to preclude summary judgment, evidence favorable to the non-movant will be accepted as true. In that context every reasonable inference will be indulged in the non-movant's favor and any doubts also resolved in its favor. The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact concerning one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970); *R.I.O. Systems,* 780 S.W.2d at 490.

---

1. On appeal, TCI states that South Texas actually delivered 4,276 revenue units.

■ In its first point of error, TCI complains that the trial court erred by rendering summary judgment on its contract claims. TCI's breach of contract claim alleges that South Texas breached paragraph 8.07 of the Purchase Agreement by demanding, accepting and refusing to refund upon demand the excess of payment of $776,880.00.

■ When a cause of action is based on breach of contract, there must be some showing of the existence of a contract between the parties; that duties were created by the contract; that a breach of·the duties occurred; and that the party sustained damages. *Title Insurance Co. v. Dean, Ludka, Harrison & Johnson,* 616 S.W.2d 683, 684 (Tex.Civ.App.—Corpus Christi 1981, no writ). In construing a written contract, the primary concern of an appellate court is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). To achieve this goal, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). No single provision, when taken alone, will be given controlling effect; rather, all the provisions must be considered with reference to the entire instrument. *Myers v. Gulf Coast Minerals Management Corp.,* 361 S.W.2d 193, 196 (Tex.1962).

Paragraph 8.07 of the Purchase Agreement provides:

8.07 *Number of Revenue Units.* On the Closing Date, Sellers [South Texas] in the aggregate shall deliver to Buyer [TCI] at least 5,180 Revenue Units; *provided however,* that if, on the Closing Date, the number of Revenue Units shall be less than 5,130, the Purchase Price shall be reduced by the amount of $780.00 for each such Revenue Unit below 5,130. If the number of Revenue Units shall be greater than 5,230, the Purchase Price shall be increased by $780.00 for each Revenue Unit above

5,230. In the event that Sellers fail to deliver 4,500 Revenue Units on the Closing Date, Buyer or Sellers shall have the right, at their option, to terminate this Agreement upon written notice to the other party. [Emphasis in original.]

Paragraphs 6.04 and 6.04(n) of the Purchase Agreement provide, in relevant part:

6.04 AT THE CLOSING, Sellers will ... deliver to Buyer:

. . . . .

(n) A certificate, signed by the President and Treasurer and attested to by its Secretary, or signed by the general partners, as the case may be, of each Seller, dated as of the Closing Date, representing and warranting to Buyer ... (ii) as to the number of non-delinquent Revenue Units of such Seller on the Closing Date.... [Emphasis omitted.]

Paragraph 11.01 of the Purchase Agreement provides, in relevant part:

11.01 *Survival of Representations and Warranties.* [A]ll other representations and warranties made by Sellers shall survive the Closing for a period of two (2) years, in each case regardless of any investigation that may have been or may be made at any time by or on behalf of Buyer. Any representation or warranty which is the subject of a claim or dispute asserted in writing prior to the expiration of the applicable of the above-stated periods shall survive with respect to such claim or dispute until the final resolution thereof.

The summary judgment evidence shows that TCI and South Texas entered into a Purchase Agreement. In accordance with paragraphs 6.04 and 6.04(n), South Texas and the other cable companies had to deliver certificates to TCI representing and warranting the number of non-delinquent revenue units to be delivered to TCI at closing. At closing, South Texas delivered·certificates to TCI which warranted and represented that 5,343 non-delinquent revenue units would be delivered. TCI agreed to pay $3,050,140.00 for these revenue units and for other assets. After the sale, however, TCI allegedly discovered that South Texas delivered only 4,247 revenue units.

This discrepancy allegedly caused TCI to over-pay South Texas by $776,880.00.

■ South Texas argues that the Purchase Agreement, viewed in its entirety, does not provide for a post-closing reduction of the purchase price. Alternatively, South Texas argues that TCI waived its right to a reduction in the purchase price. We disagree with both of these contentions.

The gist of TCI's breach of contract claim is that it is entitled to damages because South Texas failed to deliver the number of revenue units promised. We can find no language in the contract preventing TCI from seeking damages based on this theory of recovery. In fact, paragraph 6.04(n) requires South Texas to warrant in writing the number of revenue units that it would deliver at closing. Paragraph 8.07 provides a framework for increasing or decreasing the purchase price if South Texas' warranty indicated that it had delivered more or less than 5,180 revenue units. Furthermore, the language of paragraph 11.01 provides that the warranties and representations made by South Texas shall survive the closing for a period of two years. It is undisputed that the closing occurred on April 14, 1986. TCI filed suit on August 12, 1987.

Regarding South Texas' waiver claim, paragraph 15.01 of the Purchase Agreement requires that no waiver of compliance with any provision or condition shall be effective unless evidenced in writing and duly executed by the party sought to be charged with such waiver. The appellate record does not include a waiver executed by TCI. It has long been the rule in Texas that waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Sun Exploration and Production Co. v. Benton,* 728 S.W.2d 35, 37 (Tex.1987). There is no evidence that TCI intentionally relinquished its right to claim damages from South Texas for its failure to deliver the number of revenue units promised.

■ We conclude that the Purchase Agreement, viewed in its entirety, does not prevent TCI's cause of action for breach of contract. South Texas has failed to negate at least one of the elements of TCI's cause of action for breach of contract. A fact issue exists concerning whether paragraph 8.07 prevents TCI from seeking damages based on South Texas' alleged failure to deliver the number of revenue units as stated in the contract. Point one is sustained.

■ In its second point of error, TCI complains that the trial court erred by rendering summary judgment on its warranty claims. TCI alleges that South Texas committed a breach of express warranty by failing to deliver 5,343 revenue units pursuant to the purchase agreement.

■ This Court stated that "[a]n express warranty is entirely a matter of contract, wherein the seller may define or limit his obligation respecting the subject of the sale, and provide as to the manner of fulfilling the warranty or the measure of damages for its breach." *S.I. Property Owners' Association, Inc. v. Pabst Corp.,* 714 S.W.2d 358, 361 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). Above all, however, an express warranty must be explicit. At closing, South Texas delivered certificates to TCI which warranted and represented that 5,343 non-delinquent revenue units would be delivered. Furthermore, paragraph 3.19 of the Purchase Agreement states, in relevant part, that none of the certificates "will contain any untrue statement of material fact ... or will omit to state a material fact necessary to make the statements contained herein and therein not misleading." We conclude that the seller, South Texas, made an express warranty regarding the number of non-delinquent revenue units it would deliver at closing. We hold that South Texas has failed to negate TCI's cause of action for breach of express warranty; therefore, a fact issue also exists concerning whether TCI can recover damages on its cause of action for breach of express warranty. Point two is sustained.

■ In its third point of error, TCI complains that the trial court erred by rendering summary judgment on its fraud claims.

The elements of actionable fraud in Texas are (1) that a material misrepresentation was made, (2) that it was false, (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion, (4) that the representation was made with the intention that it should be acted upon by the party, (5) that the party acted in reliance on it, and (6) that the party thereby suffered injury. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983); *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.,* 736 S.W.2d 247, 251 (Tex.App.—Corpus Christi 1987, writ denied). South Texas' challenges to TCI's fraud action are (1) that South Texas did not make any representations to induce action or inaction on TCI's part, (2) that TCI did not rely upon any alleged misrepresentation, and (3) that TCI is estopped from claiming reliance because it had the means to determine the number of revenue units prior to and at the time of closing.

In his deposition, James E. Sutton, Jr., president of South Texas, said that South Texas supplied the information necessary to allow TCI to count the number of revenue units. Sutton also said that South Texas went to the closing with enough information to allow TCI to perform a revenue unit count. Ray Hernandez, counsel for TCI, denied in his deposition that he had, prior to closing, the means to determine the number of revenue units that TCI was purchasing. Hernandez did say that, prior to closing, he had access to subscriber lists and other information. He chose not to look at this material even though he had the ability to do so. Moreover, Hernandez did not look at the subscriber lists and work orders which Sutton brought to the closing; rather, he relied on Sutton's good faith and the Purchase Agreement to protect TCI from any misrepresentation concerning the number of revenue units.

South Texas cites *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962), as well as several other cases, for the proposition that a party, who has before him the documents from which he could have discovered the alleged fraud, cannot later complain of fraud in the transaction. In *Thigpen,* the Texas Supreme Court stated at page 251:

[T]he party claiming fraud has a duty to use reasonable diligence in protecting his own affairs. "In an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests and is charged with knowledge of all facts which would have been discovered by a reasonably prudent person similarly situated. And a failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." [Citation omitted.]

In the instant case, the evidence does not unequivocally show that TCI had the means or information available to determine whether South Texas was in fact delivering 5,343 non-delinquent revenue units. Even if TCI had studied the information provided, the evidence does not show, as a matter of law, that misrepresentations did not occur in the preparation of this information. Summary judgment is appropriate only when a movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). South Texas failed to meet this burden and is therefore not entitled to summary judgment based upon TCI's cause of action for fraud. Point three is sustained.

By a single cross-point, South Texas argues that if we determine that the Purchase Agreement allows for post-closing adjustments under paragraph 8.07, then it is entitled to rescind the Purchase Agreement. Paragraph 8.07 provides, in relevant part, that "[i]n the event that Sellers fail to deliver 4,500 Revenue Units on the Closing Date, Buyer or Sellers shall have the right, at their option, to terminate this Agreement upon *written notice* to the other party." (Emphasis added.) The appellate record does not contain a written notice of termination from South Texas to TCI. We cannot and do not determine South Texas' right to rescind the Purchase Agreement. The cross-point is overruled.

The trial court's judgment is RE-VERSED and the cause is REMANDED for a trial on the merits.