Judy C. JOHNSON, Appellant,

v.

Randolph L. DeLAY, et al., Appellees.

No. 13–90–159–CV.

Court of Appeals of Texas,
Corpus Christi.

April 4, 1991.

Ryan E. Stevens, William N. Ambler, Law Offices of Ryan E. Stevens, Corpus Christi, for appellant.

Ken Fields, Carlos Villarreal, Hunt, Hermansen, McKibben & Barger, Corpus Christi, for appellees.

Before NYE, C.J., and SEERDEN and KEYS, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a directed verdict granted in favor of Randolph DeLay. Appellant, Judy Johnson, sued DeLay, an attorney, for negligence and violations of the Texas Deceptive Trade Practices Act (DTPA) in preparing legal documents and misrepresenting facts in connection with the sale of her laundry business to a third party. *See* Tex.Bus.Com.Code Ann. § 17.41 et seq. (Vernon 1987). The trial court directed a verdict in favor of DeLay. Johnson complains only of the trial court's ruling concerning her DTPA cause of action. We reverse and remand.

The evidence at trial showed that Johnson was interested in selling her laundry business. She contacted Century 21 Meyers Realty to help her. Henry Vaillancourt agreed to buy the business for $120,000.00. According to Johnson, she was advised that she needed an attorney to draw up the financing and closing agreements. She was introduced to DeLay by someone at Century 21 as an attorney who could handle the technical aspects of the transaction. DeLay drew up the purchase agreements, notes, security agreements and other required documents. His fee was split between Vaillancourt and Johnson at closing.

The original terms that the parties discussed involved Vaillancourt's making a $45,000.00 down payment. Because Vaillancourt had difficulty obtaining the money, the parties then agreed to a $12,000.00 down payment and the balance to be carried in notes to Johnson. The final terms of the agreement were that Vaillancourt would make a $10,000.00 down payment, and the balance would be carried in a $2,000.00 note, a $33,000.00 note and a $75,000.00 note. Johnson testified that the notes were supposed to contain language that she had the right to take back the laundry in the event Vaillancourt defaulted. The parties also agreed, on DeLay's recommendation, that Vaillancourt would purchase an insurance policy on his life in an amount sufficient to insure the indebtedness. At closing, Vaillancourt had not purchased the policy. Johnson knew that the policy had not been obtained, but attorney DeLay told her it would be forthcoming. Henry Vaillancourt later died, without a policy on his life being issued.

After the sale, multiple problems occurred. Liens on the property had not been disclosed. Vaillancourt believed he had paid too much for the business. Johnson experienced payment problems on the

promissory notes. Johnson testified that DeLay told her that he would handle her problems. According to Johnson, she reached a point at which she informed De-Lay that she wanted a check from Vaillancourt "that day" or the keys to the laundry. She expected that DeLay would represent her. However, DeLay informed her that he could not represent either party in the matter. Attorney DeLay nevertheless represented Mrs. Vaillancourt when appellant Johnson later sued her. Johnson got a judgment in her case against Mrs. Vaillancourt, but later signed a covenant not to execute the judgment. Johnson then brought this suit against attorney DeLay.

Johnson urges by points one through four that the trial court erred in granting a directed verdict because there were fact issues remaining for the jury's consideration. Johnson first argues that the trial court erred in finding that she was not a consumer. We address this point first because it forms the basis of any relief to which she might be entitled.

■ In order to establish consumer status under the DTPA, a party must have sought or acquired goods or services by purchase or lease and the goods or services purchased must form the basis of the complaint. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351-2 (Tex.1987). The extent to which professional services are subject to the DTPA appears to be an open question. The Supreme Court has said

that its determination of whether a lawyer's professional conduct was actionable under the DTPA "must await another day". *Willis v. Maverick*, 760 S.W.2d 642, 648 (Tex.1988). The Court noted that it had previously held that a lawyer's unconscionable conduct was actionable under the DTPA, but had previously declined to extend implied warranties, likewise actionable under the DTPA, to include professional conduct. *See DeBakey v. Staggs*, 612 S.W.2d 924, 925 (Tex.1981); *Dennis v. Allison*, 698 S.W.2d 94, 96 (Tex.1985).

■ The facts presented in this trial show that Johnson was a consumer. De-Lay performed legal services for which appellant Johnson paid. His fee was split between Vaillancourt, the buyer, and Johnson at the time of closing. DeLay was hired to prepare documents which affected the interest of more than one party. Johnson, however, acquired and paid for those services directly. She was not merely a third party beneficiary to DeLay's work.[1]

■ Johnson's first point of error asserts that various fact issues were raised by the evidence. In an appeal from a directed verdict, we view the evidence in a light most favorable to the party against whom the verdict has been directed. *Qantel Business Sys. Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303 (Tex.1988). We disregard all contrary evidence.

1. A lawyer shall not represent a person if the representation of that person involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm. Supreme Court of Texas, Rules Governing the State Bar of Texas, art. X, § 9, Rule 1.06(b) (1991) [hereinafter Texas Disciplinary Rules of Professional Conduct or "the Rules"]. A lawyer may represent a client in the circumstances described in section (b) if the lawyer reasonably believes the representation of each client will not be materially affected *and* each affected or potentially affected client consents to such representation after full disclosure of, among other considerations, the possible adverse consequences and advantages of dual representation. Texas Disciplinary Rules of Professional Conduct, Rule 1.06(c) (1991). Section (d) of Rule 1.06 requires that a lawyer who repre-

sented multiple parties in a matter *shall not* thereafter represent, without all parties' prior consent, any of such parties in a dispute among the parties arising out of the matter. Furthermore, section (e) states that a lawyer accepting representation in violation of this Rule or if multiple representation subsequently become improper under this Rule, the lawyer *shall promptly withdraw* from one or more representations to the extent necessary for any remaining representation to comply with the Rule.

There is no evidence that DeLay conformed with any of the provisions of Rule 1.06. Additionally, there is no excuse offered or evident for this clear violation of a fundamental professional ethics rule. DeLay had no business representing Vaillancourt against Johnson's claims arising from his dual representation in the real estate transaction.

Johnson pleaded violations of specific sections of the DTPA as well as breach of warranty claims. First, she argues that DeLay represented that the purchase agreement included an insurance policy on the life of the purchaser, when, in fact, it did not. DeLay represented at closing that the policy would be forthcoming, but it was not. Next, she claims that because DeLay represented both the purchaser and her in the initial transaction, there was a fact issue for the jury to determine the quality of legal services received and whether the dual representation caused confusion. She also complains that DeLay told her that she had a right to take over the laundry business in the event Vaillancourt defaulted on the note. Later, DeLay informed her that he could not represent her. She argues that these acts violated various provisions of the DTPA.[2]

We note that the trial court severely limited the testimony of Johnson's expert. By answer to interrogatories, Johnson did not state that the expert would testify about DeLay's negligence. Her answer states that the expert would testify concerning the suit Johnson later filed against Mrs. Vaillancourt on the notes she signed. The trial court did not allow the testimony of the expert, except by a bill of exceptions.

Johnson claims that the directed verdict was improper because not all of her DTPA claims against DeLay required expert testimony. In this, she is correct.

▆▆▆ Expert testimony is utilized if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Tex.R.Civ.Evid. 702. A lawyer in Texas is held to the standard of care which would be exercised by a reasonably prudent attorney. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex.1989). Any action taken by DeLay involving the use of his professional judgment would require expert testimony on the standard of care, so that the jury could determine whether he acted as a reasonable, prudent attorney in

this instance. Testimony of this nature was clearly lacking here.

Johnson, however, also argues that DeLay misrepresented *facts* to her which induced her to go through with the sale. She claims that this sort of misrepresentation is not a breach of any standard of care requiring expert testimony, but may be determined by a lay person (a lay jury).

There is evidence to support Johnson's contention that DeLay misrepresented facts to her which did not concern the rendition of legal services. For instance, Johnson testified that DeLay told her that an insurance policy would be forthcoming when it was not. Johnson relied on this misrepresentaion in making her decision to go through with the sale. Vaillancourt died before any policy was issued. As a result of DeLay's actions, she claims that she received little more than $4,000.00 from a transaction in which she was supposed to have received $120,000.00. When we consider the acts of DeLay other than those in which he rendered "legal services", there is evidence of misrepresentations of fact by DeLay to further a sale in which he had a financial interest.

We find that DeLay's actions in this case operated on two levels. The first concerned his relationship to Johnson as an attorney. This relationship involved the quality of his advice to Johnson. Expert testimony was required to allow the jury to determine if DeLay conducted himself professionally in his dealings with Johnson.[3] This type of testimony was lacking in this case. The second level concerned his relationship to Johnson with regard to the representation of material facts concerning the specifics of the transaction. There was evidence that he misrepresented facts to induce her to finalize the sale. These representations did not concern the rendition of legal services and did not require expert testimony. A jury could rightfully decide, without the benefit of expert testimony, whether DeLay misrepresented facts to Johnson and whether they caused Johnson the damages she claims.

2. § 17.46(b)(1), (3), (5), (12), (14), (23), and (c)(1), and § 17.50(a)(1), (2), and (3).

3. Art. X, § 9, Rule 1.06(b) (1991) Texas Disciplinary Rules of Professional Conduct.

We hold that the trial court erred in granting the instructed veridict because there were fact issues raised to be decided by the jury. We sustain Johnson's first point of error and reverse and remand the case for a trial on the merits.

KEYS, J., not participating.