**SHELTON INSURANCE AGENCY and John M. Roberts, Appellants,**

v.

**ST. PAUL MERCURY INSURANCE COMPANY, Appellee.**

No. 13–91–325–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 14, 1993.

Rehearing Overruled Feb. 25, 1993.

J. Norman Thomas, Rita C. Berthelot, Harris & Thomas, Corpus Christi, for appellants.

Tom Hermansen, Carlos Villarreal, Hunt, Hermansen, McKibben & Barger, Corpus Christi, for appellee.

Before NYE, C.J., and GILBERTO HINOJOSA and SEERDEN, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

This case involves a suit by an insurance agency against an insurer for the alleged mishandling of a claim. Shelton Insurance Agency and John M. Roberts (collectively Shelton Agency) sued St. Paul Mercury Insurance Company, alleging violations of the DTPA, art. 21.21 of the Texas Insur-

ance Code, breach of contract, and breach of the duty of good faith and fair dealing. Shelton Agency asserted St. Paul acted in bad faith when it denied coverage to one of its customers, Frio Drilling Company. The jury found that St. Paul acted in bad faith in denying coverage and awarded Shelton Agency $258,300.52 in actual damages [1] and $500,000 in exemplary damages. The trial court granted St. Paul's motion for judgment n.o.v. and ordered that Shelton Agency take nothing. Shelton Agency raises three points of error. St. Paul raises fifteen cross-points of error. We affirm in part and reverse and render in part.

St. Paul and Shelton Agency entered into an agency agreement which authorized Shelton Agency to act as St. Paul's agent for the purpose of binding the company on coverage. In 1982, St. Paul informed John Roberts, a Shelton insurance agent, that it wanted to write insurance covering the oil-field business. Roberts sold Frio Drilling Company a policy through St. Paul which insured it against losses resulting from well blowouts.[2]

On September 8, 1983, a Frio drilling rig was drilling the Grace Dunagan No. 1 Well when, according to the rig's toolpusher, Mann Laughlin, the well "blew out," ejecting drilling mud out of the well and covering much of the equipment. St. Paul received notice of the loss and assigned the claim to Randolph Fort, its property supervisor.

Roberts testified that on January 18, 1984 (about four and one-half months after the incident), Fort informed him that St. Paul was going to deny the claim because the incident did not fit St. Paul's definition of a blowout. That same day, St. Paul filed a declaratory action against Frio in federal district court.[3]

---

1. This figure included $106,029.72 in past lost commissions from losing Frio as a customer, $118,270.80 in future lost commissions from losing Frio as a customer, and $34,000 in premiums lost by Shelton Agency to Frio which were written off.

2. The subject policy lists Frio Drilling Company, Frio Exploration Company and other entities as named insureds. These entities will be referred to collectively as Frio.

3. St. Paul filed this suit against Frio pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1982), seeking construction of the policy and a declaration that St. Paul did not have a duty or obligation to indemnify or pay benefits to Frio or any related company for the loss under the policy.

In September 1984, Frio sued Shelton Agency and St. Paul in the 94th Judicial District Court of Nueces County, Texas (Frio suit). John Eckel, Frio's former president, explained that Frio sued Shelton Agency because it bought the policy through the agency expecting that the agency would provide protection for events like the one that had occurred. However, when the claim was denied and the federal suit was filed, Frio felt the agency bore responsibility for the policy.

W.J. Shelton of the Shelton Agency testified that in October 1984, two St. Paul representatives told him that St. Paul was going to settle the Frio case and all its facets. Roberts later discovered that St. Paul had only settled that part of the Frio suit against itself and did not settle that part of Frio's suit against Shelton Agency.

St. Paul had hired attorney Ron Brin to defend Shelton Agency in the Frio suit under an errors and omissions policy which the agency had obtained through St. Paul. However, following other counsel's advice, Shelton Agency dropped its claim against Frio for roughly $40,000 in unpaid premiums [4] and settled that part of the Frio suit.

After the above events, Shelton Agency sued St. Paul, alleging St. Paul was liable to pay damages under either the blowout policy or the errors and omissions policy, but that it wrongfully and in bad faith refused to timely pay either of the claims. It sought recovery of the premiums which it wrote off in settling the Frio suit, plus lost commissions due to losing Frio as a customer.

■■■ By point one, Shelton Agency complains that the trial court erred in granting judgment n.o.v. favorable to St. Paul because it had sufficient evidence to support its causes of action. To sustain a judgment n.o.v., no evidence must exist to support the jury findings. *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex.1987); *Navarette v. Temple Indep. School Dist.*, 706 S.W.2d 308, 309 (Tex.1986); *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980).

In reviewing the grant of a motion for judgment n.o.v., the appellate court must determine whether any evidence exists upon which the jury could have made the finding. The record is reviewed in the light most favorable to the jury findings, considering only the evidence and inferences which support them and rejecting the evidence and inferences contrary to the findings. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990); *Navarette*, 706 S.W.2d at 309; *Williams*, 610 S.W.2d at 145. If more than a scintilla of competent evidence exists to support the jury's finding, then the judgment n.o.v. should be reversed. *Navarette*, 706 S.W.2d at 309.

Special Question No. 6, in pertinent part, asked the jury to answer "Yes" or "No" to the following questions:

Did ST. PAUL MERCURY INSURANCE COMPANY do any of the listed acts?

. . . .

A. Deny Frio's claim of coverage with no reasonable basis for the denial[.]

B. Fail to determine if there was a reasonable basis for denying Frio's claim.

C. Refuse to pay Frio's claim without conducting a reasonable investigation based upon all available information.

D. Fail to exercise good faith in the investigation, processing and denial of Frio's claim.

The jury answered "Yes" to all questions, except Question 6C. The jury also found that St. Paul acted intentionally and that its acts proximately caused damages to Shelton Agency.

The evidence showed that Frio was the named insured under the policy; Shelton Agency was not an additional insured or intended beneficiary under the policy. Frio bought the policy from St. Paul through Shelton Agency for its own benefit. In sum, Shelton Agency did not derive any legal relationship from the St. Paul–Frio insurance contract, aside from the fact that it facilitated the contract.

---

4. About September 25, 1983, Frio renewed the well-blowout policy with St. Paul. Shelton Agency paid for the policy on Frio's behalf. Frio did not reimburse Shelton Agency for these premiums.

■ Concerning the claim for breach of the duty of good faith and fair dealing, Shelton Agency calls our attention to testimony that it allegedly had a special relationship with St. Paul. Phillip Honeycutt, a St. Paul marketing manager, testified that a special relationship existed between St. Paul and Shelton Agency and that an agent did not have any control over whether an insurer paid a claim. He also testified that St. Paul had a responsibility to its agents and customers to make sure that claims were handled properly. Jack Larsen, a St. Paul claims manager, testified that St. Paul had an obligation to abide by a standard of fair dealing with its agents and that St. Paul had the same obligation to deal as fairly with an agent as it did with an insured. Roberts, the Shelton insurance agent, testified that he expected an insurer to provide proper claims handling services.

■ A duty of good faith and fair dealing in the processing and payment of claims arises out of the special relationship between the insured and the insurer. *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex.1988); *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). This duty of good faith and fair dealing is imposed on the insurer because of the disparity of bargaining power and the exclusive control that the insurer exercises over the processing of claims. *Aranda*, 748 S.W.2d at 212. The *Arnold* Court stated:

In the insurance context a special relationship arises out of the parties' unequal bargaining power and the nature of the insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims. In addition, without such a

cause of action insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed. An insurance company has exclusive control over the evaluation, processing and denial of claims. *Arnold*, 725 S.W.2d at 167.

In *Aranda*, the Supreme Court held that workers' compensation carriers had the duty to deal fairly and in good faith with injured employees in the processing of compensation claims. The *Aranda* Court stated:

The Workers' Compensation Act sets forth a compensation scheme that is based on a three-party agreement entered into by the employer, the employee, and the compensation carrier. [citation omitted] ... As between the compensation carrier and the employee, there is a promise for a promise; the carrier agrees to compensate the employee for injuries sustained in the course of employment, and the employee agrees to relinquish his common law rights against his employer. [citation omitted] The employee is thus a party to the contract and therefore entitled to recover in that capacity. *Aranda*, 748 S.W.2d at 212.

■ In this case, Shelton Agency was not part of a direct contractual relationship with the insured or the insurer as was the worker in *Aranda*. Since, in the insurance context, the duty of good faith and fair dealing arises out of a special trust relationship between the insurer and the insured, then St. Paul did not owe Shelton Agency the duty of good faith and fair dealing in this case. *See Aranda*, 748 S.W.2d at 212; *Arnold*, 725 S.W.2d at 167.[5] Further, Shelton Agency did not request jury questions on whether St. Paul breach-

---

5. *See also Bowman v. Charter Gen. Agency*, 799 S.W.2d 377, 380 (Tex.App.—Corpus Christi 1990, writ denied) (insurer did not owe duty of good faith and fair dealing to injured third-party driver with whom no contractual relationship existed); *Caserotti v. State Farm Ins. Co.*, 791 S.W.2d 561, 566 (Tex.App.—Dallas 1990, writ denied) (insurer did not owe duty of good faith and fair dealing to its insured who was asserting third-party claim against another insured of the same company); *Hart v. Aetna Casualty & Sur. Co.*,

756 S.W.2d 27, 28 (Tex.App.—Amarillo 1988, no writ) (insurer's duty of good faith and fair dealing did not run to an injured third party outside of the workers' compensation area); *Chaffin v. Transamerica Ins. Co.*, 731 S.W.2d 728, 732 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (duty of good faith and fair dealing did not provide homeowners cause of action against insurer of subcontractor hired to waterproof roofs for amount in excess of policy based on insurer's allegedly wrongful denial of coverage).

ed any duty owed directly to it. Since the jury was asked only questions concerning liability resulting from St. Paul's handling of Frio's claim, Shelton Agency waived any claim it might have had for breach of a duty running between St. Paul and itself. *See Ramos v. Frito–Lay, Inc.*, 784 S.W.2d 667, 668 (Tex.1990) (plaintiff has "burden to obtain affirmative answers to jury questions as to the necessary elements of his cause of action") (citing TEX.R.CIV.P. 279).

■ Concerning the claim under the Texas Insurance Code, Shelton Agency contends that it can recover against St. Paul under art. 21.21, § 16(a), which provides:

Any person who has sustained actual damages as a result of another's engaging in an act or practice declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance or in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the person or persons engaging in such acts or practices.

TEX.INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.1992). No authority exists to extend the meaning of the term "person," as found in art. 21.21, beyond one who was either an insured or an intended beneficiary of the policy. *CNA Ins. Co. v. Scheffey*, 828 S.W.2d 785, 791 (Tex.App.—Texarkana 1992, writ denied); *Chaffin*, 731 S.W.2d at 731 (and cases cited therein). In this case, Shelton Agency was neither an insured nor an intended beneficiary of the policy. We therefore hold that Shelton Agency does not have a cause of action under art. 21.21 of the Texas Insurance Code. *See Scheffey*, 828 S.W.2d at 791; *Chaffin*, 731 S.W.2d at 731.

■ Concerning the DTPA claim, Shelton Agency contends that it is a consumer under the DTPA, and therefore, can recover against St. Paul. DTPA plaintiffs must qualify as consumers, as that term is defined in § 17.45(4) of the Texas Business & Commerce Code,[6] to maintain a private cause of action under § 17.50 of the DTPA. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351 (Tex.1987). To establish DTPA consumer status, a plaintiff must have sought or acquired goods or services by purchase or lease, and the goods or services purchased or leased must form the basis of the complaint. *Barnes*, 741 S.W.2d at 351–52. *Johnson v. DeLay*, 809 S.W.2d 552, 554 (Tex.App.—Corpus Christi 1991, writ denied). A plaintiff establishes its standing as a consumer by the terms of its relationship to a transaction, not by a contractual relationship with the defendant. *Kennedy v. Sale*, 689 S.W.2d 890, 893 (Tex.1985); *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983).

In this case, Shelton Agency did not seek or acquire the policy's benefits by purchase. Roberts testified that Frio bought the policy from St. Paul and that Frio paid for the policy. Further, Shelton Agency was not covered by the policy's provisions. We therefore hold that Shelton Agency did not meet the requirements necessary to establish its consumer status. *See Barnes*, 741 S.W.2d at 351–52; *Johnson*, 809 S.W.2d at 554; *see also Dairyland County Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 774 (Tex.1983) (court stated third-party beneficiary not consumer as defined by DTPA).

■ Concerning Shelton Agency's claim for breach of contract, Shelton Agency contends that the jury's answers to Question No. 6 showed that St. Paul breached the contractual duty of proper claims handling and that the breach caused it damages. When a cause of action is based on breach of contract, a plaintiff must show the existence of a contract between the parties, that the contract created duties, that a breach of the duties occurred, and that the party sustained damages. *TCI Cablevision of Texas, Inc. v. South Texas Cable Television, Inc.*, 791 S.W.2d 269, 271 (Tex.App.—Corpus Christi 1990,

---

6. Section 17.45(4) provides in pertinent part: "'Consumer' means an individual, partnership, corporation ... who seeks or acquires by purchase or lease, any goods or services...."

writ denied). In this case, St. Paul and Shelton Agency entered into two agency agreements (one became effective in 1972 and the other became effective in 1981). The 1981 agreement[7] provided that "[t]he Company [St. Paul] shall indemnify and hold the Agent harmless against all claims, including cost of defense, which the Agent may become obligated to pay as a result of: 1. Any loss caused directly by Company error in the processing or handling of policies under this Agreement."

The evidence showed that Shelton Agency had a claim against Frio for roughly $40,000; the amount of premiums which Frio owed Shelton Agency for Frio's renewal of the well-blowout policy. Following the advice of its attorney, Shelton Agency agreed to settle the Frio suit, writing off its claim for the unpaid premiums. By its answers to Questions 6A and 6B[8], the jury found that St. Paul denied Frio's claim without a reasonable basis and that St. Paul failed to determine if a reasonable basis existed for denying Frio's claim. The jury's answers to Questions 6A and 6B factually established, as a matter of law, a breach of St. Paul's contractual obligation to indemnify Shelton Agency for the loss of the unpaid premiums which it wrote off in settling the Frio suit. *See TCI Cablevision*, 791 S.W.2d at 271. We therefore hold that Shelton Agency is entitled to recover the $34,000 which the jury awarded to cover the amount of premiums which it wrote off. Point one is sustained in part and overruled in part.

■ By cross-points one, two, seven, and eight, St. Paul contends that no evidence or insufficient evidence exists to support the jury's answers to Questions 6A and 6B. In considering a "no evidence," "insufficient evidence," or "against the great weight and preponderance of the evidence" point of error, we follow the tests in *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 458 (Tex.1985); *Glover v. Tex-*

as *Gen. Indem. Co.*, 619 S.W.2d 400, 401–02 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Allied Fin. Co. v. Garza*, 626 S.W.2d 120, 125 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

■ The Texas Supreme Court has applied the following standard of care to an insured's claim that an insurer breached its duty of good faith and fair dealing. A claimant must establish the absence of a reasonable basis for denying or delaying payment of the benefits of the policy *and* that the insurer knew or should have known that a reasonable basis did not exist for denying the claim or delaying payment of the claim. *Aranda*, 748 S.W.2d at 213; *see also Arnold*, 725 S.W.2d at 167. *Aranda* explained that:

> The first element of this test requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits. The second element balances the right of an insurer to reject an invalid claim and the duty of the carrier to investigate and pay compensable claims. This element will be met by establishing that the carrier actually knew there was no reasonable basis to deny the claim or delay payment, or by establishing that the carrier, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay. Under the test, carriers will maintain the right to deny invalid or questionable claims and will not be subject to liability for an erroneous denial of a claim. Carriers that breach the duty of good faith and fair dealing, however, will be subject to liability for their tortious conduct.

*Aranda*, 748 S.W.2d at 213. In *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129 (Tex.1988), the Court summarized *Aranda's* holding as establishing

---

7. The 1981 agreement stated that "[t]his Agreement supersedes all previous Agency Agreements, between the Company and the Agent...."

8. The jury's answer to Question 6D also shows that a breach of contract occurred.

breach of the duty of good faith and fair dealing when the insurer fails "to promptly and equitably pay an insured's claim when liability becomes reasonably clear." *Vail*, 754 S.W.2d at 135.

■■■■■ Under the second element of the test, the "special relationship" between the insured and insurer imposes on the insurer a duty to investigate claims thoroughly and in good faith, and to deny those claims only after an investigation reveals that a reasonable basis exists to do so. *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 568 (Tex.1990). Whether a reasonable basis exists for denying a claim must be judged by the facts before the insurer at the time the claim was denied. *Viles*, 788 S.W.2d at 567.

The evidence showed that St. Paul had hired an adjuster, Jack Estes, to investigate the Frio claim. From September 1983 to January 1984, he sent St. Paul monthly reports which showed that the loss occurred due to a blowout. Another company had an engineer, Gene Kelly, working on this claim. He informed St. Paul that a blowout had occurred.

On January 12, 1984, Mann Laughlin (the toolpusher) gave a sworn statement to St. Paul's attorney, Kent Westmoreland, in which he stated that the well "blew out." In December 1983, John Roberts sent a letter to St. Paul advising it that Shelton Agency was satisfied that a blowout had occurred and that the policy did not define a blowout.

In October 1984, St. Paul obtained a legal opinion concerning its coverage. The opinion stated that "it would be very difficult to maintain that the damage suffered at the Grace Dunagan No. 1 was not caused by a blow-out, especially in view of the lack of a definitive definition of this term within the subject policy."

St. Paul had hired attorney Westmoreland for advice on whether it provided coverage. He determined that a "kick" rather than a blowout had occurred and advised St. Paul to deny the claim because cover-age did not exist. Based on counsel's advice, St. Paul denied the claim.

Jack Larsen, the St. Paul claims manager, testified that when an ambiguity or undefined term exists in a property casualty policy, the term is construed to favor coverage, He explained that St. Paul should have covered the loss because the term "blowout" was not defined in the policy. Art Creager, who had worked nearly thirty-nine years in insurance claims, testified that St. Paul did not have a reasonable basis to deny the claim.

Concerning proximate cause, John Eckel testified that Frio sued Shelton Agency due, in part, to St. Paul's denial of its claim. He also testified that Frio did not pay the premiums (which Shelton Agency wrote off) because it was in litigation with the agency, and because Frio felt that it did not receive value for the policy.

We therefore hold that the evidence was sufficient to support the jury's findings that St. Paul denied Frio's claim with no reasonable basis for the denial, that it failed to determine if a reasonable basis existed for denying Frio's claim, and that St. Paul's acts proximately caused damages to Shelton Agency.[9] *See Aranda*, 748 S.W.2d at 213; *Arnold*, 725 S.W.2d at 167. Cross-points one, two, seven, and eight are overruled.

■■■■ By cross-points six and eleven, St. Paul contends that no evidence or insufficient evidence existed to support the jury's finding that $34,000 would fairly and reasonably compensate Shelton Agency for its premiums which were written off. John Eckel testified that Shelton Agency had a claim for premiums from Frio Drilling Company for roughly $10,000 and a claim from Frio Exploration Company for roughly $38,000. He also testified that neither company paid these amounts to Shelton Agency. Roberts and W.J. Shelton testified that the agency wrote off roughly $40,000 in premiums in order to settle the Frio suit. We therefore hold that suffi-

9. We need not discuss whether St. Paul acted intentionally because the jury's finding that St. Paul acted intentionally only goes to its award of punitive damages. We are not awarding punitive damages in this case.

cient evidence existed to support the jury's finding that $34,000 would fairly and reasonably compensate Shelton Agency for the premiums which it wrote off. Cross-points six and eleven are overruled.

By cross-points twelve and thirteen, St. Paul contends that no evidence or insufficient evidence exists to support the jury's award of exemplary damages. Punitive damages are not recoverable for breach of contract. *Texas Nat'l Bank v. Karnes,* 717 S.W.2d 901, 903 (Tex.1986); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). This rule prevails even if the contract was maliciously breached. *Manges v. Guerra,* 673 S.W.2d 180, 184 (Tex.1984); *Amoco Prod. Co. v. Alexander,* 622 S.W.2d 563, 571 (Tex.1981). The party seeking punitive damages must secure at least one finding of an independent tort with accompanying actual damages. *Karnes,* 717 S.W.2d at 903; *Reed,* 711 S.W.2d at 618. In this case, Shelton Agency did not obtain a finding of an independent tort with accompanying actual damages. We therefore hold that Shelton Agency is not entitled to recover the award of exemplary damages. *See Karnes,* 717 S.W.2d at 903; *Reed,* 711 S.W.2d at 618. Cross-points twelve and thirteen are sustained.

By cross-point fourteen, St. Paul contends that the jury's findings to Questions 6C and 6D are in fatal conflict, and therefore, the case should be remanded for a new trial. Shelton Agency's recovery on its claim for breach of contract was based on the jury's answers to Questions 6A and 6B. Even if Questions 6C and 6D were in fatal conflict, this would not affect Shelton Agency's recovery for breach of contract. Cross-point fourteen is overruled.

Due to our disposition of point one and the above cross-points, we need not address the remaining points or cross-points. TEX. R.APP.P. 90(a).

We AFFIRM the trial court's judgment on the DTPA, insurance code, breach of good faith, and punitive damages claims. We REVERSE the trial court's judgment on the breach of contract claim and RENDER that Shelton Agency recover $34,000.